PEOPLE *v.* KELLER.

1. INTOXICATING LIQUORS — CRIMINAL LAW — ARREST — SEARCHES AND SEIZURES.

Where officers, after midnight, saw an unlighted truck containing beer cases driven at great speed over a highway leading from the lake shore, the driver of which refused to halt when called upon, the facts and circumstances were such as to justify them in believing that an offense was being committed, and they were justified in seizing the truck and its contents which they later found abandoned by the side of the highway, and in arresting defendant, whom they recognized as the driver.

2. CRIMINAL LAW—EVIDENCE—JUDICIAL NOTICE.

Courts may take judicial notice of public facts and geographical positions.

3. SAME—NOT UNLAWFUL TO TRAIL SUSPECTED OFFENDER.

It is not unnatural or unlawful for an officer to trail a truck which he suspects may be out late at night for the purpose of rumrunning, if no private rights or property are interfered with.

4. WITNESSES—CREDIBILITY—RELATIONS OF WITNESS TO DEFENDANT MAY BE SHOWN.

As bearing upon credibility, it may be shown and considered whether the relations of a witness with, or his feelings toward, a party are friendly or the reverse.

5. CRIMINAL LAW—INTOXICATING LIQUORS — STRIKING TESTIMONY —ABUSE OF DISCRETION.

Where, in a prosecution for violating the liquor law, the sheriff was a witness, but it appears that he had not planned or directed the activities leading to defendant's arrest, and therefore was not a material witness, it was not a prejudicial abuse of judicial discretion to strike out defendant's testimony that the sheriff or his family had a grudge against defendant.

[1]Arrest, 5 C. J. § 30; 3 A. L. R. 1514; 13 A. L. R. 1316; 27 A. L. R. 709; 39 A. L. R. 811; 41 A. L. R. 1539; 15 R. C. L. 413; 3 R. C. L. Supp. 465; 4 R. C. L. Supp. 994; 5 R. C. L. Supp. 838; 6 R. C. L. Supp. 913; Intoxicating Liquors, 33 C. J. § 376; [2]Criminal Law, 16 C. J. §§ 949, 954; 15 R. C. L. 1083; 3 R. C. L. Supp. 530; 4 R. C. L. Supp. 1037; [3]Searches and Seizures, 35 Cyc. p. 1265 (Anno); [4]Witnesses, 40 Cyc. p. 2656; [5]Criminal Law, 17 C. J. §§ 3581, 3678.

Error to Monroe; Root (Jesse H.), J.    Submitted April 15, 1927.    (Docket No. 150.)    Decided May 3, 1927.

Owen Keller was convicted of violating the liquor law, and sentenced to imprisonment for not less than six months nor more than one year in the State prison at Jackson.    Affirmed.

*Clayton C. Golden* and *William F. Haas*, for appellant.

*William W. Potter*, Attorney General, and *Edgar G. Gordon*, Prosecuting Attorney, for the people.

STEERE, J.    Defendant was convicted in the Monroe county circuit court of having, on August 16, 1925, unlawfully possessed and transported, at LaSalle township in said county, a certain quantity of intoxicating liquor, consisting of 100 cases of Canadian beer.    The township of LaSalle is bounded on the east by Lake Erie.    In outline, the people's testimony shows that Joseph Kinsey was the sheriff of Monroe county and Edward Kinsey was a deputy.    What the latter's activities were in his official capacity up to August 15, 1925, are left to conjecture; but, as his story starts and runs, near midnight of August 15, 1925, he was alone in a Ford roadster driving on a stone road in LaSalle township which "runs from the old Dixie east to where you turn on North Shore," and passed a Reo speedwagon which he saw ahead of him.    When passing he recognized defendant as its driver and the truck as one he had before seen him driving, it having a covered top that ran the full length with curtains on the side back of the cab.    He drove on out of sight, and describes his subsequent maneuvers as "trailing him."    He saw defendant again about an hour and a half later, driving his truck just north of what he designates as "Toledo Beach," where the road runs down to the lake.    He drove his own car

so that he could observe the truck until it stopped at the lake front. This was shortly after midnight in the morning of August 16, 1925. After making these observations he went to a farmer's house where there was a telephone, called up the sheriff at Monroe, notified him of what he had discovered, and asked for help. The sheriff testified that when calling for help Edward said "Keller's beer truck was headed toward the lake, and he was at Godfrey Saul's, in LaSalle township." The sheriff promptly sent three deputies in a larger car, who found the deputy who had called for help and the four drove under his directions by devious ways towards the lake shore. They finally reached the shore by a winding road at a point where they saw defendant starting away from the beach with his unlighted truck. They were just at the side of the road, angling towards it, and had obscured their lights, but turned them full on the truck as he passed. They saw it was driven by defendant and loaded with what they recognized as beer cases or cartons piled up in the truck behind the driver higher than the back of his seat. Part of them jumped out as he passed and called upon him to stop, but he drove rapidly by without checking, and they fired several shots at the tires of his truck, but he sped away in the darkness out of their sight. They then got into their car, swung around and followed but did not overtake him or his truck for nearly a quarter of a mile, when they found the truck with its load, ditched in a low place at the side of the road partially concealed in the brush growing there, with its lights out, the pet cock under the gas tank opened and defendant gone. They took possession of the truck and found it was loaded with 100 cases of Regal's Canadian beer, 24 bottles to the case. One of the deputies was left in charge of the truck and it was later delivered to the sheriff. Two of the deputies went back to the

beach where the truck came from, heard a motor boat going out on the lake, found where the truck had been loaded from the shore and four cases of beer which had been left there. They were unable to find defendant that night, but he was apprehended later. Customary preliminary proceedings were had, resulting in defendant being held for trial. When trial was reached in the circuit court, he was convicted.

The defense upon the facts was an absolute *alibi*. The events of that night, as testified to by the four participating officers, stands undisputed, except their identification of defendant as driver of the truck. He testified, with some supporting testimony by members of his family, that on the night and at the time of these transactions he was at home, in bed, and knew nothing of what transpired; he neither owned, or drove a truck on that day or night, and "wasn't in that truck as testified to by the officers between 2 and 3 o'clock in the morning." He did not see the truck claimed to have been seized, but his brother Irving "had a truck that he kept, over at Bill's farm. About a mile from our farm."

The material issues of fact were submitted to the jury under a fair and impartial charge. Defendant's counsel say in their brief:

"The grounds upon which the defendant relies for reversal may be grouped in two subdivisions, to wit: (*a*) That the court erred in denying defendant's motion to suppress evidence. (*b*) That the court erred in rejecting and striking evidence as to prejudice, bias, and adverse interest of witnesses Joseph Kinsey and Edward Kinsey toward defendant."

Prior to the trial, a special motion was made in defendant's behalf for an order suppressing "all evidence consisting of intoxicating liquors, and upon the alleged possession of which the within cause is based," on the ground that it was seized without a search warrant and without "the existence of sufficient facts

to justify the search for or seizure of the evidence."
Denial of this motion is defendant's first and most
strenuously urged ground for reversal. It is ap-
parently predicated upon the following proposition,
made by his counsel:

"That where there exists an intimately correlated
and continuous succession of effort and action having
for its sole object the search and seizure of certain
property regardless of any pertinent knowledge ac-
quired or facts disclosed subsequent to the initiation
of such succession of effort and action, it may very
reasonably endow the entire series of such effort and
action with the character of seizure and search; that
the actual instant of physical and active search and
seizure becomes merely incidental to the whole chain
of circumstances constituting the real search and the
real seizure."

Carried to its logical conclusion and practically ap-
plied in the administration of criminal law, that
proposition, if tenable, would seem to introduce a far-
reaching and potential element in the science of
criminal jurisprudence for suppression of any in-
timately correlated and continuous effort of police
officers to detect and suppress crime. The law of
search and seizure, as applied to motor cars and other
vehicles of transportation and travel, has been so re-
cently and frequently under consideration in many
courts of last resort, that, as applied to this case, it
seems sufficient to point out that here the seizure was
only of the truck after the officers had seen it rushing
by them from the lake shore in the dead of the night
with its lights out, and by turning their lights upon
it plainly saw its load and driver, who refused to halt
and drove rapidly on in the darkness. The facts
and circumstances then seen and known by those of-
ficers were such as to warrant prudent and cautious
men in believing an offense was being committed.
*Carroll* v. *United States,* 267 U. S. 132 (45 Sup. Ct.
280, 39 A. L. R. 790).

As said in that case, the courts may take judicial notice of public facts and geographical positions. It is fairly inferable that Deputy Kinsey was patrolling that region near the shore of Lake Erie on the lookout for rumrunners generally. His trailing and watching defendant after discovering him out with a truck in that locality at that time of night was not an unnatural nor unlawful thing for an officer so situated to do. He thereby in no way interfered with defendant's private life, free action, person, liberty, or property. In fact, defendant was not even aware of the deputy's proximity during that time. Defendant himself was not searched or seized on that occasion, but only the abandoned truck which he denied owning or driving. Under the undisputed testimony of the officers as to what they could and did see of the contents of the truck before they ever touched it, in connection with the time, place, and circumstances shown, their search and seizure of it when shortly after found abandoned was lawful. *People* v. *Chomis,* 223 Mich. 289; *People* v. *Cardella,* 233 Mich. 505; *Carroll* v. *United States, supra.*

Defendant's remaining assignment of error relates to ruling of the court in striking out his testimony, introduced to show prejudice against him on the part of witnesses Joseph Kinsey, sheriff, and Edward Kinsey, his deputy. When that subject was taken up by defendant's counsel, on cross-examination, Edward replied there had been no hard feeling between him and the Keller family, nor anything he would call hard feeling between the two families, although a few unpleasant things happened in the past causing a little hard feeling which did not affect his own feeling toward defendant. The sheriff said he heard his brother testify on the subject, which he explained as between other members of the families, and said there had been no animosity between him and defend-

ant.    Defendant was asked by his counsel, on direct-examination:

"Has there been any bad blood between you and the sheriff or the sheriff's family?"

To which he replied:

"There has been a little grudge there, I guess."

This was stricken out on objection of the prosecutor as an improper matter to inquire about.    The court might, in its discretion, have permitted the answer to stand.

"As bearing upon credibility, it may be shown and considered whether the relations of a witness with or his feelings toward a party are friendly or the reverse; but it is as a rule immaterial whether the feeling is or is not justifiable."    40 Cyc. p. 2656.

Extreme cases may be found where, under circumstances shown, denial of the right to show ill will toward a party as bearing on a witness' credibility was regarded as an abuse of discretion; but in the instant case we are unable to conclude that the ruling was such prejudicial abuse of judicial discretion as calls for reversal.    The sheriff was scarcely a material witness.    He is not shown to have planned or directed the activities of that night.    His testimony was to the undisputed facts that he received Edward's message asking for help, and sent in response three officers to assist him.    The deputy, Edward, denied any ill feeling towards defendant, and is not shown to have been searching for him that night, but incidentally ran across him at a time and under such circumstances as would naturally lead a police officer on duty to such a course as he took.    The ruling on that collateral matter was discretionary with the court. We find no prejudicial abuse of discretion.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.