## PEOPLE v. ABSHER.

1. CRIMINAL LAW—INTOXICATING LIQUORS—TRIAL—INSTRUCTIONS.
   In a prosecution for violating the prohibition law, the charge of the trial court, in submitting to the jury the validity of the seizure of liquor in defendant's possession at the time of his arrest, held, not open to the objection that the court with one breath submitted to the jury the question as to the legality of the search, and in the next told them that the evidence was proper to come before them.

2. ARREST—SEARCH AND SEIZURE WITHOUT WARRANT.
   To justify an officer in stopping an automobile and seizing the same with its contents, without a warrant, he must have reasonable or probable cause for believing that it has contraband liquor therein which is being illegally transported.

3. CRIMINAL LAW—SECOND OFFENSE—SUFFICIENCY OF EVIDENCE ON PRELIMINARY EXAMINATION.
   Evidence produced at the preliminary examination of de-

[1]Intoxicating Liquors, 33 C. J. § 547; [2]Id., 33 C. J. § 376; [3]Criminal Law, 16 C. J. § 598.

fendant charged with a second offense violation of the prohibition law, *held*, sufficient to support the return of probable cause by the justice.

4. Intoxicating Liquors—Permission to Search Without Warrant Justifies Seizure.

Where permission to search an automobile was given to the officers by the driver thereof, the search and seizure of intoxicating liquors contained therein was legal, although the officers had no warrant.

Error to Ingham; Collingwood (Charles B.), J. Submitted June 16, 1927. (Docket No. 106.) Decided July 29, 1927.

Sam Absher was convicted of violating the liquor law, and sentenced to imprisonment for not less than six months nor more than two years in the State prison at Jackson.    Affirmed.

*John F. Berry*, for appellant.

*William W. Potter*, Attorney General, *Barnard Pierce*, Prosecuting Attorney, and *Joseph W. Planck*, Assistant Prosecuting Attorney, for the people.

Steere, J.    On March 11, 1927, defendant was convicted and sentenced in the circuit court of Ingham county for unlawfully having in his possession a quantity of intoxicating liquor, charged as a second offense. The case is here for review on exceptions directed to refusal of the court to discharge defendant on his preliminary examination and also when arraigned in the circuit court later, on the ground that his arrest was unlawful, for error in rulings during the trial and in the charge of the court.    All questions raised and argued were saved by motions timely made, objections, and exceptions.

The testimony shows that on the evening of June 7, 1926, State troopers Spencer and Menard, of the

[4]Intoxicating Liquors, 33 C. J. § 376.

Michigan State police, stationed at the Harrison avenue State police post adjacent to East Lansing, were instructed by Lieutenant Lyons, their commanding officer, to patrol out east Grand River avenue on M-16 east, the main traveled thoroughfare between Lansing and Detroit, and watch for a Hudson coupé, Michigan license 248, which was then coming towards Lansing from the east, and, if it came along, to arrest the driver and bring him in, as the coupé was supposed to have a load of liquor, "and to use caution in making the arrest, because either one or both of the men in it were known to have served a previous sentence for violation of the prohibition law." Lieutenant Lyons testified that he was stationed at the State police barracks on Harrison avenue near East Lansing in charge of the first district of the State department of public safety, which included Ingham, Livingston, Eaton, and other adjacent counties in that portion of the State. Troopers Spencer and Menard were serving under him and subject to his orders. On the evening of June 7, 1926, he received a telephone message from one of his men at a point east of Lansing, the important portion of which he made a pencil notation, and distinctly remembered, saying in part:

"He told me there was a Hudson coupé bearing Michigan license 248 coming in towards Lansing which would probably be in on M-16 in a very short time. * * * He said the Hudson coupé had a load of liquor. * * * Following this conversation, I immediately instructed Troopers Spencer and Menard to take their motorcycles and go out on M-16 east of East Lansing and watch for this car, and if it came along to bring the driver in and the car."

After receiving their instructions Spencer and Menard at once proceeded through East Lansing out to a gasoline station on M-16 near the end of the boulevard where they waited until they saw a Hudson coupé

having the license number given them by Lieutenant Lyons coming from the east toward Lansing. After it passed the gas station they mounted their motorcycles and followed until it reached the main corner of East Lansing opposite the State College cafeteria, where they stopped it and Spencer asked the driver for his operator's license, which he produced, and then for the registration of his car which he said he did not have, as the car belonged to a man named Howdy at Pine Lake. The driver was defendant Absher, and a man named Joe Howard was riding with him. Spencer asked Absher if he was traveling light or heavy, and he said light. Spencer testified he then asked him:

"If we might look into the rear of the car, and he said surely, go ahead, but when we went to the rear of the car, we found the rear compartment locked. I asked him for the key, and he said he didn't have it, that the car wasn't his. * * * That this man Howdy, who he named as the owner of the car, had that key."

Spencer then told him to accompany them to the police station, which he did. Some time later, and before further search of the car was made, Spencer told him he was under arrest for speeding, in relation to which he testified that as they followed the coupé into the city of East Lansing he noticed their speed, his motorcycle being equipped with a speedometer, which showed that they were going from 30 to 31 miles an hour, exceeding the speed limit in East Lansing. When they reported with defendant and the coupé at the police station they made further search of the car, and found a small leather folder containing some keys, one of which unlocked the back compartment. They found in the car some bottles of whisky and a case of beer. The customary prosecution proceedings were had in which this alleged

violation of the prohibition law was charged as a second offense. A portion of the liquor seized by the officers, with proof of its intoxicating properties, was introduced in evidence on the preliminary examination before the committing magistrate and at the trial. Objections and motions to suppress the evidence and discharge defendant were duly made at the preliminary examination, and in the circuit court both before and during the trial.

Defendant's assignments of error are condensed for consideration to denial of those motions, refusal to "quash the information and to strike therefrom the count charging the offense in question as a second offense," and errors in the charge.

Aside from the general contention that a verdict should have been directed for defendant, the claim of error in the charge is against the following excerpts from the beginning and end of a paragraph submitting the validity of the seizure to the jury:

"Now, under our law any constable or sheriff may arrest any person whom he suspects or has reasonable grounds of suspecting that he has committed or is committing a felony. * * * The court so held, that the evidence was a proper evidence to come before you."

The entire paragraph reads as follows:

"Now, under our law any constable or sheriff may arrest any person whom he suspects or has reasonable ground of suspecting that he has committed or is committing a felony. In driving, cars pass over our highways every day. No officer has a right without any reason to stop a car and say 'stop, I am going to search your car for liquor.' The thing would be unreasonable. And before an officer can do that he must have some fact or evidence which would induce any fair-minded man of average intelligence and judgment, to believe that the person had committed or was committing a felony. You heard the statement of the officer as to where he got his information and what information he did receive, and it is for you to de-

termine, whether or not he was a fair-minded man, of average intelligence. And it is for you to determine, in this case, whether or not the intelligence which he received would convince such a person that a felony had been or was being committed. If you find such to be the fact, then his searching of the car was legal, and his seizure of the liquor was legal, and it was properly introduced in evidence. The court so held, that the evidence was a proper evidence to come before you."

It is said in the brief of defendant that this concluding sentence presented an anomalous situation in the particular that the court with one breath submitted the legality of the search, seizure, and arrest to the jury, and in the next told them the evidence on that subject which the court had admitted "was a proper evidence to come before you."

We are unable to give the concluding sentence of this paragraph the serious consideration urged. It is not contradictory of what went before, but a superfluous and innocuous peroration, announcing a self-evident fact, for the court had ruled and held throughout the trial, against repeated objection, that such evidence was proper, admitted it to come before the jury, and refused to suppress or strike it out.

The court's introductory use of the words "suspects" and "suspecting" was an inadvertence which might call for serious consideration had the court not promptly corrected it by stating and explaining the correct rule. In *Carroll* v. *United States*, 267 U. S. 132 (45 Sup. Ct. 280, 39 A. L. R. 790), the applicable rule is thus stated by Chief Justice Taft:

"The measure of legality of such seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile he stops and seizes has contraband liquor therein which is being illegally transported."

The instruction, considered in its entirety, is fairly in harmony with that rule.

Defendant's assigned error as to a charged second offense is based on claimed lack of identifying proof before the examining magistrate to warrant committing him for trial under that charge, citing *People v. McDonald*, 233 Mich. 98.   In that case, as here, the charge was laid as a second offense in the complaint, warrant, and information, but there no proof whatever was offered before the committing magistrate that defendant had ever been convicted of a like offense.   Recourse to the original record in that case shows the subject was ignored by the prosecution at the preliminary examination.   At the preliminary examination in the instant case, the files and records of the circuit court of Ingham county in the case of "People of the State of Michigan against Sam Absher" were produced, identified as such by the clerk of that court, and put in evidence.   It was pointed out that the entries on page 283 of the circuit court journal showed said Absher was convicted and sentenced in that case and court, on the date and for the offense set out in the complaint before the justice charging this as a second offense.   On cross-examination by defendant's counsel, the clerk replied he could not swear that the Sam Absher named in that record was the respondent in this case.   The secretary of the police department of Lansing was then called as a witness and testified he knew the defendant, Sam Absher, whose preliminary examination was then in progress. A partial question as to defendant "having been arrested in May, 1924—" was checked by objection of defendant's counsel, followed by discussion and a general objection to "this entire line of testimony as to any oral testimony he knows about this man's arrest," which was overruled.   The witness was then asked by the prosecutor and answered him as follows:

"*Q.* Do you know whether or not this respondent, Sam Absher, seated beside Mr. B——, was ever before

convicted in the circuit court of Ingham county on a charge of violating the State liquor law?

"A. Yes."

Asked if he recalled the date, he replied: "It was in September —," when defendant's counsel interrupted with the inquiry if witness was present when the jury brought in the verdict or when sentence was pronounced, to which he replied that he did not know, might have been, but would not swear to it.

Following this, with various objections intervening, the witness testified he was custodian of the police department records. Whether he produced them before the magistrate or they were offered in evidence is left to inference. When the prosecutor proceeded to interrogate the witness further about them, defendant's counsel interposed the objection that they were "incompetent, highly incompetent; they are hearsay and not competent records in this court." A series of questions and answers followed, against defendant's objections overruled by the magistrate, in which the witness testified, either from memory or their examination, that the police department records showed defendant had been convicted and sentenced in the circuit court of that county on the date and for the offense shown by the records of that court. But eliminating the testimony as to records of the police department, we think there was before the justice sufficient competent testimony at the preliminary examination to support his return of probable cause to believe defendant guilty of the offense charged in the complaint and warrant. The evidence on the trial of former conviction was ample to support the verdict.

The question of arrest without a warrant in this class of cases on probable cause and reasonable ground to believe that a felony is being committed has been so recently and exhaustively reviewed by Justice SHARPE in the prevailing opinion of *People* v. *Kamhout*,

227 Mich. 172, and cases there cited, that we find no occasion here to further discuss that question; especially as the testimony is undisputed that defendant granted the officers permission to search the coupé he was driving, which was held by a unanimous court to justify the search and seizure, and warrant the conviction in *People* v. *Chyc*, 219 Mich. 273.

No reversible error is found, and the judgment of sentence will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.