PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* LANSING MUNICIPAL JUDGE.

1. SEARCHES AND SEIZURES—TEST OF REASONABLENESS OF SEARCH WITHOUT WARRANT—PROBABLE CAUSE—ANONYMOUS INFORMATION.

  The test of the reasonableness of a search without a warrant is whether the officer making it had, prior to the search, knowledge of such facts or reasonable cause to believe the existence of such facts as would amount to the probable cause which is made a prerequisite to the issuance of a search warrant under the Constitution and anonymous information does not meet such test (Const 1908, art 2, § 10, as amended in 1935).

2. SAME—SEARCH WITHOUT WARRANT—REASONABLE BELIEF THAT LAW WAS BEING VIOLATED.

  To justify a search and seizure without a warrant, the officer must act on some fact or circumstance or upon such information that would create in his mind a reasonable and honest belief that the law was being violated (Const 1908, art 2, § 10, as amended in 1935).

3. SAME—HIGHWAY USERS—PROBABLE CAUSE.

  Persons entitled to use the highways have a right to free passage without interruption or search except upon probable cause for believing the law to be violated and neither the mere refusal of a person to submit to search nor the mere suspicion on part of the officer is such a fact as gives rise to probable cause to believe that an offense is being committed entitling the officer to proceed with the search (Const 1908, art 2, § 10, as amended in 1935).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 47 Am Jur, Searches and Seizures, §§ 52, 53.
[4] Search incident to one offense as justifying seizure of instruments of or articles connected with another offense. 169 ALR 1419.
[7] 24 Am Jur, Game and Game Laws, §§ 10, 11.
[8] 11 Am Jur, Constitutional Law, § 86; 14 Am Jur, Courts, §§ 198, 203.

4. SAME—PROMISCUOUS STOPPING OF AUTOMOBILES—SUBTERFUGE.

An officer may not stop automobiles upon public highways promiscuously and demand the showing of drivers' licenses as a subterfuge for the purpose of invading the traveler's constitutional rights and then search the automobiles for contraband matter (Const 1908, art 2, § 10, as amended in 1935).

5. SAME — SEARCH WITHOUT WARRANT — GAME — FISH — PROBABLE CAUSE—CONSTITUTIONAL LAW.

Statutory provision empowering a conservation officer to require person exercising the privilege of hunting, fishing or trapping to subject his conveyances and other specified types of property in his possession to search without warrant upon the officer's reasonable belief that the person in question has been, is, or is about to be, engaged in the exercise of such privilege but without probable cause to believe him to be violating the law is unconstitutional (Const 1908, art 2, § 10, as amended in 1935; CL 1948, § 300.21 *et seq.*).

6. CONSTITUTIONAL LAW—"UNREASONABLE" SEARCHES AND SEIZURES —CONSTRUCTION.

The term "unreasonable," as used in the Constitution securing persons from "unreasonable searches and seizures," must be accorded the same meaning intended thereby as when it was incorporated into the Constitution, and as so construed was not intended to interfere with inspections, without warrant or probable cause, of distilleries, breweries, grog shops, lodging establishments, foods, et cetera, for the protection of the public health or safety or for the collection of public revenues (Const 1908, art 2, § 10, as amended in 1935).

7. SAME—LICENSES—WAIVER OF RIGHTS—CONDITIONS—WILD LIFE.

A State may not impose upon the permission to take wild life the condition that the State be allowed to invade the constitutional rights of the individual, even though, in the exercise of its police powers, it may ban the taking of wild life altogether.

8. SAME—COURTS—LEGISLATURE—OFFICERS.

Courts are charged with the solemn obligation of erecting a barrier around the constitutional rights of persons against legislative or executive invasion.

NORTH, BUTZEL, and CARR, JJ., dissenting.

Mandamus by people of the State of Michigan, *ex rel.* Stephen J. Roth, Attorney General, against Paul C. Younger, Lansing Municipal Judge, to compel issuance of warrant. Submitted October 11, 1949. (Calendar No. 44,438.) Writ denied April 3, 1950.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Nicholas V. Olds,* Assistant Attorney General, and *Charles R. MacLean,* Prosecuting Attorney, for the plaintiff.

*Louis D. McGregor* (*Raymond R. Campbell,* of counsel), for defendant.

North, J. (*dissenting*). By this mandamus proceeding in this Court plaintiff seeks to compel defendant Paul C. Younger, who is judge of the municipal court of the city of Lansing, to issue a warrant for the arrest of one Marshall Keeler. The complaint submitted to defendant charged Keeler with having violated PA 1948 (1st Ex Sess), No 43.[*] Defendant refused to issue the warrant on the ground that the cited act is unconstitutional. If in the respect herein considered the act is unconstitutional mandamus should be denied; but if the act is not unconstitutional mandamus should be granted. We quote from Act No 43:

"Sec. 3. To hunt, fish or trap, or to capture or kill wild life as defined herein, or to possess or transport the same is hereby declared to be a privilege to be exercised only in accordance with the laws granting said privilege. Every person exercising said privilege does so subject to the right of the State to inspect and examine, private dwelling houses, cold storage lockers and cold storage plants excluded, without warrant, any hunting, fishing or trapping

---

[*] CL 1948, § 300.21 *et seq.* (Stat Ann 1949 Cum Supp § 13.1231 (1) *et seq.*).—Reporter.

apparatus or appliance, guns or ammunition in his possession or under his control and ordinarily used in hunting, fishing or trapping, or any boat, conveyance, vehicle, automobile, hunting or fishing camp, fish box, fish house, net house, fish basket, game bag, game coat or any other receptacle, car or conveyance, in which such wild life may be kept, carried or transported.

"Sec. 4. It shall be the duty of every person participating in or exercising the privilege of hunting, fishing or trapping, or in any manner killing, taking, capturing, possessing or transporting wild life in this State, to permit and allow the director of conservation [which under the statute includes any conservation officer] to inspect, count and examine such wild life which he has caught, killed or captured, or which is in his possession or under his control, in order to ascertain whether the requirements and provisions of the laws pertaining to wild life have been or are being complied with, or to obtain information or data on the number, age, size, species, sex and physical condition of such wild life. The director of conservation is hereby empowered to request and require any person whom he reasonably believes to be, about to be, or to have been engaged in hunting, fishing or trapping, or who he has good reason to believe is in possession of or has control over wild life; or is in possession of or has control over hunting, fishing or trapping apparatus or appliances, guns or ammunition ordinarily used in hunting, fishing or trapping, to forthwith permit and allow said director of conservation to inspect, count and examine all such wild life, and to permit and allow the director of conservation to inspect and examine any hunting, fishing or trapping apparatus or appliances, guns or ammunition ordinarily used in hunting, fishing or trapping, in his possession or under his control; and the director of conservation is hereby empowered to arrest without warrant any person refusing or failing to comply with such request or requirement:   *   *   * *Provided further,* That nothing contained in this act

shall be deemed to permit or allow the setting up or operation on designated State of Michigan trunk line highways of any road blockade, which, for the purpose of this act, shall be deemed to be the promiscuous or arbitrary halting of vehicular traffic for inspection or examination."

The act further provides that any person who resists inspection as provided in the statute or interferes with a conservation officer in performance of his duty under the act shall be guilty of a misdemeanor, punishable by commitment to the county jail for not less than 30 days or a fine of not more than $100, or both. The complaint involved herein charged that Keeler:

"Did then and there refuse to permit and allow the said Earl Goff, a duly authorized conservation officer of the State of Michigan, to inspect and examine the game coat and bag then and there being worn by the said Marshall Keeler; did then and there refuse to permit and allow the said Earl Goff to inspect and examine a certain shotgun and fishing equipment in the possession of and being carried and transported in an automobile by the said Marshall Keeler; did then and there refuse to permit and allow the said Earl Goff to inspect and examine wild life then and there in the possession of and being carried and transported by said Marshall Keeler; did then and there refuse to permit and allow the said Earl Goff to inspect and examine a certain automobile then and there being operated by and under the control of said Marshall Keeler in order to determine whether said Marshall Keeler was then and there in the possession of or was carrying or transporting any wild life, the said Marshall Keeler having then and there exercised and was exercising the privilege of hunting and fishing wild life, all as defined and described in the provisions of PA 1948 (1st Ex Sess), No 43."

In the main the asserted unconstitutionality of Act No 43 is on the ground that it is violative of

article 2, § 10, of the Michigan Constitution, and also of the Fourth and Fourteenth Amendments to the United States Constitution. So far as herein material, article 2, § 10, of the Michigan Constitution reads:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

The Fourth Amendment to the Federal Constitution is in substance so similar to the quoted portion of article 2, § 10, of the State Constitution that it need not be quoted. The pertinent portion of the Fourteenth Amendment to the United States Constitution is in section 1, and reads:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The issue before us is this: Is this Act No 43, wherein it provides for the right of a conservation officer "to inspect and examine" under the circumstances and limitations provided in the act, violative of any of the noted constitutional provisions? We are not concerned with the wisdom of the legislation. *People* v. *Soule,* 238 Mich 130, 138. We agree with plaintiff's assertion that:

"At common law, and by statutory enactment, and in fact, all wild life belongs to and is made the property of the State of Michigan and, as such proprietor, as trustee for all the people, it has extraordinary power to control and regulate the manner and methods by which said wild life may be taken or possessed,

and to lay down the terms and conditions under which it may be taken, transported, used or possessed; * * *

"By virtue of its rights as proprietor in trust for the people of this State and under its police powers, the State is charged with and has the high duty and obligation of preserving, protecting and increasing the wild life in this State."

See *People v. Zimberg,* 321 Mich 655; *People v. Soule, supra.*

In considering the propriety or reasonableness of the exercise by the State of its police powers in the field above noted, it is important to bear in mind that the State has in the past expended large sums of money in preserving, protecting and increasing the wild life of the State, that such wild life is an important and valuable source of food, that it provides a means of recreation and of adding to the wealth of the State in that it attracts tourists from other States, fosters the interests of those concerned with the tourist business, and to some extent adds to property subject to taxation. And further, through utilization by conservation officers of the statutory right "to inspect, count and examine," information and data can be obtained which will materially aid the director of conservation in propagating and preserving wild life and in promoting and protecting related public welfare and public safety. Likewise in reaching decision herein it is essential to note that the constitutional provisions pertain only to *"unreasonable* searches and seizures."

"The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable." *Carroll* v. *United States,* 267 US 132, 147 (45 S Ct 280, 69 L ed 543, 39 ALR 790).

"Since only 'unreasonable' search and seizure is forbidden by the Constitution, whether a search or seizure is unreasonable becomes a judicial, and not a

legislative, question under all the circumstances under which it is made." *People* v. *Case* (syllabus), 220 Mich 379 (27 ALR 686).

Further the statute here involved restricts the right of the conservation officer "to inspect, count and examine," to circumstances incident to which "he reasonably believes (the person accosted) to be, about to be, or to have been engaged in hunting, fishing or trapping, or who he has good reason to believe is in possession of or has control over wild life; or is in possession of or has control over hunting, fishing or trapping apparatus or appliances, guns or ammunition ordinarily used in hunting, fishing or trapping."

The record in the instant case amply discloses the necessity, incident to public safety and welfare, for the exercise of the State's police power relative to taking, possessing, marketing, et cetera, fish and game which in the first instance is the property of the State. *People* v. *Soule, supra.* To take or possess such wild life is not a right of the individual. Instead it is a privilege granted by the sovereign State; and incident to the granting of the privilege any reasonable limitations or conditions may be imposed. While the issue of search of the individual or his immediate possessions was not involved, incident to the enforcement of our automobile laws we have held:

"In accepting a license from the State, one must also accept all reasonable conditions imposed by the State in granting it." *Surtman* v. *Secretary of State* (syllabus), 309 Mich 270.

"In accepting the license from the State, one must also accept all reasonable conditions imposed by the State in granting the license." *People* v. *Thompson,* 259 Mich 109, 123.

"A license to operate a motor vehicle is a privilege granted by the State and, since it is a special privilege, special duties in connection therewith may be exacted without providing compensation therefor.

"The right to impose a condition upon a licensee of the State is not based upon culpability, but instead it is incident to his status as a licensee." *Larr* v. *Secretary of State* (syllabi), 317 Mich 121.

Concerning a city ordinance which required a license to operate a public lodging house, we have held:

"Section 5a of said ordinance providing that the chief of police, members of the police force, health officer, and all other officers charged with the enforcement of the ordinance shall at all times have free access to all parts of the premises licensed, is not in violation of the constitutional provision against unreasonable searches and seizures; the place licensed not being a private dwelling but a public rooming house." *People* v. *Harley* (syllabus), 230 Mich 676.

Numerous ordinances and statutes of this State, not all but some of which have been passed upon and held valid, are comparable in the provisions for search to those just above noted. The following are a few of many of such enactments:

(1) Ordinance licensing bottle club, held constitutional in *Mutchall* v. *City of Kalamazoo*, 323 Mich 215.

(2) Dairy inspection. Penalty for resisting. CL 1948, § 288.8 (Stat Ann § 12.608); CL 1948, § 289.61 (Stat Ann § 12.851).

(3) Livestock inspection. Penalty for obstructing. CL 1948, § 287.15a (Stat Ann § 12.385).

(4) Apple inspection. Right to enter premises. CL 1948, § 290.86 (Stat Ann 1949 Cum Supp § 12.-1214).

(5) Corn borer statute. Right of entry. Penalty for hindering. CL 1948, §§ 286.302, 286.303 (Stat Ann §§ 12.312, 12.313); CL 1948, § 286.321 (Stat Ann § 12.321).

The controlling issue in the instant case narrows down to this: Is the provision in this statute giving the conservation officer the right "to inspect, count and examine," limited as above noted, a provision which attempts to authorize an *unreasonable* search? In this jurisdiction the question is novel; and we are advised of only 2 jurisdictions where a similar statutory provision has been passed upon by a court of last resort. In each instance the act was sustained.

To fully sense the applicability and the persuasive force of 1 of these 2 cases, the court's opinion should be read in full in *State* v. *Hall,* 164 Tenn 548 (51 SW2d 851). The provisions in the Tennessee statute* requiring a sportsman to permit a conservation officer "to inspect and count such wild animals, wild birds, wild fowls and fish" are so strikingly like the corresponding Michigan statutory provisions that they need not be quoted. After noting that title to game not reduced to possession is in the several States "in trust for their inhabitants," and that no one has an absolute right to possess such game, which "is a privilege," the court's opinion in part reads:

"This being true, we see no reason why the State may not annex to this privilege any condition and limitation it sees fit. If the sportsman is unwilling to avail himself of the privilege accorded him, upon the terms and provisions prescribed, he may decline the invitation, but he cannot enjoy the benefits of this act without submitting to its burdens and restrictions. * * *

"In 56 CJ, pp 1178, 1179, it is said: 'The constitutional immunity from unreasonable searches and seizures, being a personal privilege, may be waived,

---

* Tennessee PA 1931, chap 51, § 7.—Reporter.

as by a voluntary invitation or consent to a search or seizure. Thus individuals may waive their immunity to illegal searches of their person, possessions, dwelling houses, as well as to the illegal search of their premises, or places of business.' "

The other decision of a court of last resort in this field of the law which we have noted is *State* v. *Bennett,* 315 Mo 1267 (288 SW 50). In part the Missouri statute provided:

"It is hereby made the duty of every person participating in the privileges of taking or possessing fish, birds, animals, and game, as permitted by this article, to permit the game and fish commissioner or his deputies to inspect, and count such fish, birds, animals, and game, to ascertain whether the requirements of this article are being faithfully complied with. Any person who shall refuse to comply with a demand to permit such inspection and count by any authorized officer of this State, or who shall interfere with such officer or obstruct such inspection or count shall be guilty of a misdemeanor." Missouri RS 1919, § 5645; Missouri RS 1939, § 8951.

The court's opinion states it was contended by the defendant, who was being prosecuted under the statute above quoted in part, that the quoted statute was repugnant to the provisions of the Missouri constitution "that the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures." The contention of the State, which was upheld by the court, is stated in the court's opinion as follows:

"The State contends these are reasonable police regulations to prevent evasions of and for the effectual enforcement of the act; that defendant had no interest whatever in the quail that he may have taken; that he simply had a privilege to kill or have in his possession a limited number on any one day; that he accepted his license under the terms, restric-

tions and limitations of the law, and consented in advance that the game warden might at any time count the quail in his possession and that such inspection and count of the quail in the defendant's possession, so taken and accepted under the provisions of the act, were not an unreasonable search or seizure, but that such requirement was a reasonable and necessary police regulation for the enforcement of the statute."

Concerning the constitutionality of the Missouri statutory provision as to inspection and count, the court held:

"And (it) is not violative of the constitutional provisions invoked; that the statute, being of general application to all persons alike, is not repugnant to the due-process and equal-protection clauses of the Constitution (*Duncan* v. *Missouri,* 152 US 377 [14 S Ct 570, 38 L ed 485]), and furthermore, that the defendant cannot play fast-and-loose; that by accepting a hunter's license and exercising the privilege under the restrictions and limitations of the statute, one of which was his duty to submit to the inspection and count of the quail in his possession by the game warden, he waived the constitutional rights invoked so far as applicable to the facts in this case."

A Pennsylvania court of intermediate jurisdiction has rendered a decision under a like statutory provision for game inspection which is in accord with those just above noted. A headnote reads:

"Section 214(h) and (i) of the game law of June 3, 1937, PL 1225, providing for inspection by State officers, without warrant, at any time, of vehicles or conveyances, their occupants or contents, in order to determine whether an unlawfully loaded firearm or unlawfully killed game is being carried or conveyed, does not contravene article 1, § 8, of the Constitution of Pennsylvania, prohibiting unreasonable searches and seizures." *Commonwealth* v. *Butler,* 40 Pa D & C 358.

There has not been called to our attention nor has our research disclosed a decision of any court of last resort wherein a conclusion was reached which was contrary to the decisions above noted. In *People* v. *Weaver,* 241 Mich 616 (58 ALR 733), we said:

"As a general rule it may be stated that the authorities agree to the proposition that one may waive the issuance of a search warrant and by consent permit the search of his premises."

It would seem to follow that one may also waive his right against unreasonable search of his person. The statute provides that as a condition of the conservation officer's right to require a person to permit the officer "to inspect, count and examine" game or equipment for taking game which are in such person's possession, the officer must "reasonably" believe that the person accosted comes within the limited purview of the statute. The officer may not act on mere suspicion (*People* v. *Stein,* 265 Mich 610 [92 ALR 481]). However the record in the instant case discloses abundant facts and circumstances to justify a reasonable belief as required by the statute. Notwithstanding the statutory provision involved in the instant case: "No one will contend that an officer may promiscuously stop automobiles upon the public highway and demand the driver's license merely as a subterfuge to invade the constitutional right of the traveler to be secure against unreasonable search and seizure." *People* v. *Roache,* 237 Mich 215, 222.

We are not in accord with the claim of defendant, but not seriously stressed, that this Act No 43 in the particulars here involved violates the Fourteenth Amendment to the United States Constitution, in that it deprives one of due process and equal protection of the law. This statute applies equally to all persons who are like situated. In *Duncan* v. *Mis-*

*souri,* 152 US 377, 382 (14 S Ct 570, 38 L ed 485), it is said: "Due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." See, also, *State* v. *Bennett, supra.*

The record before us is persuasive that the controverted statutory provisions are a reasonable and quite essential aid in the performance of the duties of the director of conservation, who is charged not only with enforcement of laws against illegal taking of various species of wild life, but also with acquiring information and data which will aid in the propagation and preservation of game and fish and in the promotion of related public safety and public welfare. Our consideration of this case brings the conclusion that PA 1948 (1st Ex Sess), No 43, is not unconstitutional in any of the respects asserted by defendant. If necessary the writ of mandamus should issue. The only question here involved being one of public importance, no costs will be awarded.

Butzel and Carr, JJ., concurred with North, J.

Dethmers, J. The Michigan Constitution of 1908, art 2, § 10, secures the person, houses, papers and possessions of every person from unreasonable searches and seizures. The test of the reasonableness of a search without a warrant is whether the officer making it had, prior to the search, knowledge of such facts or reasonable cause to believe the existence of such facts as would amount to the probable cause which is made a prerequisite to the issuance of a search warrant under the provisions of said section 10. *People* v. *Hagadorn,* 255 Mich 121; *People* v. *Miller,* 245 Mich 115; *People* v. *Kamhout,* 227 Mich 172; *People* v. *Keller,* 238 Mich 543; *People* v. *Roache,* 237 Mich 215. Anonymous information does

not meet the test. *People* v. *Guertins,* 224 Mich 8; *People* v. *Miller, supra.* In considering the validity of a search, without a warrant, of an automobile, this Court, in *People* v. *Miller, supra,* held such search reasonable and the officer making it to have been acting upon probable cause when "from the exercise of his own senses or acting upon information received from sources apparently reliable, a prudent and careful person, having due regard for the rights of others, would be induced to the honest belief that a felony was being committed in such automobile. *People* v. *Kamhout,* 227 Mich 172." Similarly, in *Carroll* v. *United States,* 267 US 132 (45 S Ct 280, 69 L ed 543, 39 ALR 790), the court held such search valid if made upon probable cause and that such probable cause exists only if facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information, are sufficient in themselves to warrant a man of prudence and caution in believing that an offense has been or is being committed. A like view of the reasonableness of a search without a warrant is reflected in *People* v. *Orlando,* 305 Mich 686; *People* v. *Nappo,* 251 Mich 89; *People* v. *Absher,* 240 Mich 107, and in *People* v. *Goss,* 246 Mich 524, in which the Court said:

"To justify a search and seizure, the officer must act on some fact or circumstance or upon such information that would create in his mind a reasonable and honest belief that the law was being violated."

Likewise, in *Carroll* v. *United States, supra,* it was said that persons entitled to use the highways have a right to free passage without interruption or search except upon probable cause for believing the law to be violated. Furthermore, the mere refusal of a person to submit to search is not such a fact as gives rise to probable cause to believe that an offense is being committed entitling the officer to pro-

ceed with the search. *State* v. *Gibbs,* 252 Wis 227
(31 NW2d 143). Neither may an officer make a
search on the basis of mere suspicion without prob-
able cause to believe that the law is being violated.
See *People* v. *Stein,* 265 Mich 610 (92 ALR 481), and
*People* v. *Roache, supra,* in which this Court held
that an officer may not stop automobiles upon public
highways promiscuously and demand the showing
of drivers' licenses as a subterfuge for the purpose
of invading the travelers' constitutional rights and
then searching the automobiles for liquor.

The probable cause referred to in the cases as af-
fording the basis for reasonable search is invariably
probable cause to believe that an unlawful act has
been or is being committed. Never yet has it been
held that probable cause to believe that a lawful act
has been, is being, or in the future will be committed,
renders a search based thereon reasonable. Accord-
ingly, the provisions of PA 1948 (1st Ex Sess), No
43 (CL 1948, § 300.21 *et seq.* [Stat Ann 1949 Cum
Supp § 13.1231(1) *et seq.*]) subjecting to search
without a warrant the boat, conveyance, vehicle,
automobile, hunting or fishing camp, fish box, fish
house, net house, fish basket, game bag, game coat,
or any other receptacle, car or conveyance in which
wild life may be kept, carried or transported, of any
person exercising the privilege of hunting, fishing or
trapping, et cetera, and empowering conservation
officers to require a person to permit such officers to
inspect and examine, without warrant, all wild life
and any hunting, fishing or trapping apparatus, guns
or ammunition in such person's possession or under
his control merely upon the officer's reasonable be-
lief that the person in question has been, is, or is
about to be engaged in hunting, fishing or trapping
of wild life or is in possession of such wild life or
apparatus, but without probable cause to believe that
such person has been or is violating the law, such

provisions of the act are in undoubted contravention of the Michigan Constitution, art 2, § 10.

It is urged, however, that a person may waive his constitutional rights against unreasonable search and, in fact, invite such search (*People* v. *Weaver,* 241 Mich 616 [58 ALR 733]); that, like Esau of old selling his birthright for a mess of pottage, a person may barter his constitutional rights in exchange for some privilege; and, finally, if the full force of plaintiff's logic herein is to be recognized, that it follows as a natural next step (a disguised *non sequitur*) that a person may be compelled by law to waive his constitutional rights in exchange for and upon his exercise of the privilege of hunting, fishing, trapping or possessing wild life. Assuming at this point that the statute goes no further than to affect the constitutional rights of persons exercising the mentioned privilege (and it does go further), it is to be observed that the alleged waiver is, at best, involuntary except in the sense that the person in question may exercise or refrain from exercising the said privilege at his option. Having exercised it, the statute would leave him no option as to the waiver of his constitutional rights against unreasonable search.

In support of this waiver theory, to what Michigan authorities are we cited? Mention is made of *Surtman* v. *Secretary of State,* 309 Mich 270; *Larr* v. *Secretary of State,* 317 Mich 121; *People* v. *Thompson,* 259 Mich 109, in which it was held that in accepting a license from the State to operate a motor vehicle upon public highways one must also accept all reasonable conditions imposed by the State thereon, such as the requirement that he stop and give assistance in cases of accidents, or that he comply with the financial responsibility act. But these cases do not hold, and it has not yet been held in Michigan, that use of the highways involves waiver of one's

constitutional rights against unreasonable search. That such waiver is not involved appears from such cases as *People* v. *Kamhout, supra.* Can it be plaintiff's position that this is true solely because the legislature has not yet seen fit to require waiver of such constitutional immunity as a condition precedent to the use of the highways? To ask the question is to glimpse the lengths to which we shall one day be led, if, in the instant case, the "inspect and examine" requirements of the statute are upheld on a waiver theory. But more of that later.

Next, we are directed to *People* v. *Harley,* 230 Mich 676, and *Mutchall* v. *City of Kalamazoo,* 323 Mich 215. The *Harley Case* involved the constitutionality of a city ordinance providing for licensing of public lodging houses and in the *Mutchall Case* licensing so-called "bottle clubs," under which ordinances it was provided that the premises so used should be subject to inspection by city police and health officers. In neither of these cases was decision upholding the constitutionality of the ordinance predicated on the theory that the owner of the premises had traded in his constitutional rights for his license. Rather, in the *Harley Case,* the reasoning upholding the validity of the inspection requirement is contained in just 2 sentences, as follows:

"It must be remembered that this is not a private dwelling house, but is a public rooming house. See *Keiper* v. *City of Louisville,* 152 Ky 691 (154 SW 18)."

The Kentucky case held simply that an ordinance providing for inspection of foods in places where offered for sale, to prevent the sale of impure foods, did not violate the Constitution because it did not authorize an unreasonable search. The *Mutchall Case* advances no particular reasoning on the subject other than to rely on the authority of the *Har-*

*ley Case* and also of *Robison* v. *Haug,* 71 Mich 38; *People* v. *Henwood,* 123 Mich 317; *People* v. *Shuler,* 136 Mich 161. In the *Robison Case* it was held that the constitutional stricture on unreasonable search was not violated by a statute requiring that in places where liquor is sold all curtains, screens or other things that obstruct the view therein from outside shall be removed during hours when liquor may not be sold. In the opinion in that case we find a similar rationale to that in *People* v. *Harley, supra,* the Court saying of the constitutional objections raised that they "would undoubtedly be correct were the provisions of such a statute sought to be applied to one's dwelling, or to any place where any useful business, profession, trade, or occupation is carried on." The Court further upheld the provision by saying, "It is neither a search of his premises, nor a seizure of his property." Then, significantly, the Court said:

"The business of selling intoxicating liquors has for many years, both in this country and in England, been regarded by legislatures and courts with disfavor; and it does not stand upon the same plane of utility and morality with many useful arts, trades, and professions."

In the *Henwood Case* the Court, in upholding a statutory requirement that druggists report liquor sales to prosecuting attorneys as not violative of the constitutional guaranty against unreasonable searches, said that decision was governed by *Robison* v. *Haug, supra,* the reasoning of which was therein adopted. In the *Shuler Case* the same statutory requirement upon druggists was before the Court, which disposed of objections thereto by stating that *People* v. *Henwood, supra,* governed. In not one of these cases is it suggested that acceptance of a license or exercise of a privilege constitutes a waiver

of constitutional immunity from unreasonable searches. In this connection note might as well be taken also of such cases as *United States* v. *Hilsinger,* 284 Fed 585, in which the right of Federal officers to inspect distilleries without a warrant is upheld, the court saying:

"The production of alcoholic liquors has always been a matter of governmental surveillance, to which, it has been considered, the manufacturer submits when he enters upon the business. See the full discussion of this subject in *United States* v. *Three Tons of Coal,* 28 Fed Cas 149, 157, No 16,515. The entry and inspection of industrial establishments under executive regulations to secure compliance with law does not seem to have been regarded as amounting to unreasonable search. See the meat inspection act of March 4, 1907 (34 Stat 1260; Comp St § 8681), and the case of *Pittsburgh Melting Co.* v. *Totten,* 248 US 1 (39 S Ct 3, 63 L ed 97), where it was held that the meat inspection act was within the powers of congress. It is well known that meat inspectors are placed in the slaughterhouses where the meat is inspected. They inspect each piece and stamp it if in accordance with the government requirements. Yet that is not an unreasonable search. See, also, the case of *United States* v. *Cudahy Packing Co.* (DC), 243 Fed 441."

Of the same tenor is *United States* v. *Three Tons of Coal,* 28 Fed Cas 149 (Case No 16,515). For an example of a slightly different character, in *Hester* v. *United States,* 265 US 57 (44 S Ct 445, 68 L ed 898), it was held that searches of open fields and woods had never been considered unreasonable and that, hence, the constitutional inhibition had never applied thereto.

A careful study of the history of general warrants in England, writs of assistance in the colonies, particularly Massachusetts, and of the old English cases of *Leach* v. *Money,* 11 Harg St Trials 307; *Wilkes* v.

*Wood,* 19 How St Trials 1154; and *Entick* v. *Carrington,* 19 How St Trials 1030; and the argument of James Otis in *Paxton's Case,* Quincy's (Mass) 51, et cetera, does not disclose that the urge, prior to the Revolutionary War and the adoption of the Constitution of the United States, for freedom from unreasonable searches, as finally declared in the Fourth Amendment of the Federal Constitution and later in those of the several States, was ever directed against or that it was ever considered unreasonable to cause inspections, without warrants or probable cause, of distilleries, breweries, grog shops, lodging establishments, foods, et cetera, for the protection of public health and safety or for the collection of public revenues. To the term "unreasonable" must be accorded the same meaning intended thereby when it was incorporated into the constitutional provision. *Carroll* v. *United States, supra.* Accordingly, cases hereinbefore considered which upheld such inspections appear to have done so invariably because these were never deemed unreasonable nor to constitute unreasonable searches and, therefore, the constitutional prohibition was never directed against them; but never on the theory that engaging in the businesses involved amounted to a waiver of constitutional rights.

Though not precisely in point here, for Michigan cases holding that arbitrary or unreasonable burdens or conditions imposed by State or local government upon the exercise of a governmentally granted license, franchise or privilege are unconstitutional, see *Chaddock* v. *Day,* 75 Mich 527 (4 LRA 809, 13 Am St Rep 468); *People* v. *Rawley,* 231 Mich 374 (39 ALR 1381); and *Robison* v. *Miner,* 68 Mich 549. More to the point is *Fidelity & Deposit Co. of Maryland* v. *Tafoya,* 270 US 426 (46 S Ct 331, 70 L ed 664), in which the supreme court of the United States held that while a State may arbitrarily exclude a foreign

corporation from doing business within the State, it may not use that power to impose unconstitutional conditions upon the exercise of a State license granted to such corporation to enter and do business within the State.  As applied to the instant case, the logic of the *Tafoya Case* and of the several cases therein cited (which see) would seem to be that, even though the State, in the exercise of its police powers, may ban the taking of wild life altogether, it may not permit and condition such taking upon unconstitutional conditions, that is to say, the State may not impose upon the permission to take wild life the condition that the State be allowed to invade the constitutional rights of the individual.  Similarly, as relates to another area within the constitutional inhibition, namely, the search of a person's papers, it has been held in *Ex Parte Jackson,* 96 US 727 (24 L ed 877), that when a person exercises the privilege of using the United States mails congress may not attach, as a condition to such use, permission for officials to violate such person's constitutional rights by searching his letters in the mails without search warrant and without probable cause.

We are left, then, with no support in the decided cases for the waiver theory, except as it is to be found in *State* v. *Hall,* 164 Tenn 548 (51 SW2d 851), and *State* v. *Bennett,* 315 Mo 1267 (288 SW 50), and, from a court of intermediate jurisdiction, the case of *Commonwealth* v. *Butler,* 40 Pa D & C 358.  Shall these cases be followed?

Under Michigan law a man may not marry a wife, operate a motor vehicle on the highways, practice law, or a number of other things, without a license from the State.  May the legislature condition the granting of such licenses upon the applicant's waiver of his constitutional rights against unreasonable search of his home, marital chamber, automobile, law office or other place where a licensed activity occurs?

It does not appear that legislative ingenuity has yet reached an end to finding reasons and justification for subjecting further myriads of activities to licensing requirements, such reasons ranging from preserving of the public health, safety, morals and welfare to insuring collection of public revenues. Were we to hold that in every instance in which a license may lawfully be required its granting may at the same time be conditioned upon waiver of constitutional rights against unreasonable search, what area could conceivably remain immune and beyond legislative reach, upon which the constitutional guaranty might still operate? It will be said that no legislature would go so far as to dry up the entire stream of constitutional immunity. But it is not the genius of our system that the constitutional rights of persons shall depend for their efficacy upon legislative benevolence. Rather, the courts are charged with the solemn obligation of erecting around those rights, in adjudicated cases, a barrier against legislative or executive invasion. It is the responsibility of the courts to breathe the breath of life into constitutional rights, mandates, guaranties and limitations in the very face of contravening legislation.

It is suggested, however, that it would not necessarily follow from a decision upholding the statute before us that other pursuits could be licensed on a condition of waiver of constitutional rights inasmuch as hunting, fishing, trapping and possessing wild life are privileges, the exercise of which falls within a different classification than any other human endeavor; that title to wild life is absolute in the State and that, therefore, the State may impose upon its taking conditions which might well be invalid as relates to the licensing of other activities. But nowhere do the authorities indicate that the title of the State in and to wild life is of a character with that in property devoted exclusively to governmental

function, such as the Capitol, military equipment of the national guard, or weapons of the police. On the contrary, the cases hold, as plaintiff concedes, that the State's title to wild life is in trust for the people and that the State exercises control thereover "as a trust for the benefit of the people, and not as a prerogative for the advantage of the government, as distinct from the people" (*Geer* v. *Connecticut,* 161 US 519 [16 S Ct 600, 40 L ed 793], cited with approval and relied upon in *People* v. *Zimberg,* 321 Mich 655). Hence, in the exercise of such control, in trust for the people, it would not appear that the State's power to attach to a license or privilege in that regard the condition of waiver of constitutional rights would be one whit greater than in the case of licensing other activities nor that the approval of such course in the former instance could fail to open the door to a like course in the latter.

I concur in views expressed concerning the economic importance and recreational value of laws and administrative procedures designed to conserve natural resources and to protect and increase wild life, but the principle that not one person's constitutional rights shall be invaded by the State must be considered to outweigh every wild-life consideration.

Even were the waiver theory to be embraced, the statute would still not be without infirmities. The right of an officer to search extends under the act not alone to those whom the plaintiff contends have waived their constitutional rights by exercising the privilege of hunting, fishing and trapping, et cetera, but to anyone whom such officer "reasonably believes to be, about to be, or to have been engaged" in exercising such privilege or whom he reasonably believes is in possession of or has control over certain equipment and appliances, et cetera. How would the person whom the officer reasonably believes to be, about to be, or to have been so engaged, but who

in truth and fact is not, has not been and is not about to so engage, have waived his constitutional rights against unreasonable search? As for the person who once has been so engaged, would the waiver be for the balance of his life and perpetually beyond his power of subsequent revocation? As for the person who is about to, or who in the future will so engage, at what time would his waiver begin to operate? Would it be when the intent first enters his mind or upon occurrence of his first overt act in that direction, or when shall it be said to be? Concerning persons in possession of equipment and appliances, lawfully possessed as a matter of right and not as a privilege granted by the sovereign State, by what process would their constitutional rights have been waived?

It is urged that the statute is important to successful law enforcement.

"The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of these great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA 1915B 834, Ann Cas 1915C 1177).

"It has been repeatedly decided that these Amendments (4th and 5th) should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." *Gouled* v. *United States,* 255 US 298, 304 (41 S Ct 261, 65 L ed 647).

The implications of the "inspect and examine" provisions of the statute before us, if upheld, are such as might well give rise, in time, to an expression comparable to that made by James Otis concerning writs.

of assistance in the famous *Paxton's Case, supra,* in which he said:

" 'The worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law, that ever was found in an English law book'; since they placed 'the liberty of every man in the hands of every petty officer.' " (1 Cooley's Constitutional Limitations [8th ed], 615.)

"Near in importance to exemption from any arbitrary control of the person is that maxim of the common law which secures to the citizen immunity in his home against the prying eyes of the government, and protection in person, property, and papers against even the process of the law, except in a few specified cases. The maxim that 'every man's house is his castle', is made a part of our constitutional law in the clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen. * * * (Footnote) The eloquent passage in Chatham's speech on General Warrants is familiar: 'The poorest man may, in his cottage, bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England may not enter; all his force dares not cross the threshold of the ruined tenement.' " (1 Cooley's Constitutional Limitations [8th ed], 610.)

For the reasons and in the respects indicated the act is unconstitutional. Mandamus should be denied. No costs, a public question being involved.

Boyles, C. J., and Reid, Bushnell, and Sharpe, JJ., concurred with Dethmers, J.