PEOPLE *v.* STEIN.

1. MANDAMUS—INFERENCES.

All reasonable inferences must be drawn in support of action of examining magistrate whose action is reviewed by mandamus.

2. SAME—EXAMINATION—EVIDENCE—CRIMINAL LAW.

Facts *held,* insufficient to warrant issuance of mandamus to reinstate criminal proceedings, it being assumed that people presented at the examination all facts in their possession justifying the arrest, the examining magistrate and Supreme Court being confined to such testimony.

3. EVIDENCE—JUDICIAL NOTICE.

Judicial notice may be taken of the fact that law-abiding citizens ride in automobiles as well as law-breakers.

4. ARREST—GENERAL SUSPICION.

Arrest by police officer without warrant may not be made on mere general suspicion that, perhaps, a crime is being committed.

5. SAME—RESULT OF SEARCH.

Result of search cannot be taken into consideration in any way in determining validity of arrest.

6. CRIMINAL LAW—EVIDENCE—SEARCHES AND SEIZURES—TAXICAB PASSENGER COMPARTMENT.

Pistol is not admissible in evidence in prosecution for carrying weapons without license where seized by police officers who found it after they had stopped speeding taxicab and arrested passengers on general suspicion and then searched passenger compartment (Act No. 328, Pub. Acts 1931, § 227).

WEADOCK, SHARPE, and BUTZEL, JJ., dissenting.

Appeal from Recorder's Court of Detroit; Scallen (John P.), J. Submitted October 17, 1933. (Calendar No. 37,377.) Decided December 29, 1933,

Sam Stein and Joe Massie were charged with carrying dangerous weapons in a motor vehicle. Order of dismissal by examining magistrate is reviewed by appeal in the nature of mandamus. Writ denied.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *William D. Brusstar* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

*Harry Hanley,* for defendant Stein.

*Edward H. Kennedy,* for defendant Massie.

*John C. Bills, amicus curiæ.*

Fead, J. Defendants were charged with carrying a revolver and a pistol in a vehicle occupied by them, without possessing a license to carry the weapons, contrary to Act No. 328, Pub. Acts 1931, § 227, the Michigan penal code.

On examination, before a judge of the recorder's court acting as magistrate, the weapons were denied admission in evidence on the ground that they had been obtained by illegal arrest and search. Defendants were discharged. The people ask writ of mandamus to compel the magistrate to reinstate the proceedings and receive the weapons in evidence. *Voorhies* v. *Judge of Recorder's Court,* 220 Mich. 155 (27 A. L. R. 706).

About 6:50 p. m. of June 19th last, four police officers were in a cruising car, a Lincoln sedan, on Gratiot avenue in the city of Detroit. Daniel Sullivan was the driver. Patrolman Van Cavage sat with him in the front seat and Patrolmen Cotter and Vohs were in the back seat. Cotter sat on the left side and was the only one in uniform.

Sullivan's attention was attracted to a taxicab in which defendants were passengers because it was "traveling pretty fast," about 32 miles per hour. He pursued it about a block and, when he was "right abreast of the back rear door" of the cab he "noticed the defendant Stein reaching into his pocket as if to take something out and place his hand behind him * * * as if he was taking something out of his pocket and putting it on the seat beside him" or behind him. Stein's motion gave Sullivan "the idea that he was putting a gun away." He spoke to Van Cavage, forced the cab to the curb, the other officers got out, arrested defendants, searched them and found a revolver on Massie's person and a pistol on the seat behind where Stein had sat.

The reason for the arrest and search rested upon the testimony of Sullivan, who was recalled twice by the people for examination. Sullivan repeatedly said he did not see what Stein took out of his pocket and "we merely arrested him on suspicion" because of the motion he had made. The officers had no prior knowledge of or acquaintance with either defendant. Defendants were riding in a peaceful manner and "minding their own business." The record does not indicate that the Lincoln sedan had anything about it to distinguish it as a police car.

An inference that Stein saw and recognized the sedan as a police car because Cotter was in uniform or for any other reason cannot be indulged, first, because, in mandamus proceedings, which enforce only clear legal rights, all reasonable inferences must be drawn in support of the action of the magistrate; and second, because it is not justified by the facts.

The respective positions of the car and Stein and Cotter negative the inference. The police car came

abreast of the cab on the left side, and, when Stein made the motion, the rear seat of the cruiser evidently was not in his sight. Had Stein acted in a surreptitious manner or as though he were hiding something or had he been watching the cruiser, the officers would have so testified. At least we must assume that the people developed all the facts in their possession justifying the arrest. Both the magistrate and this court are confined to the testimony.

The issue is whether the arrest was lawful because the search was based solely upon the arrest. The essential question before us is whether the arrest was justified as a matter of law. Or, to otherwise state it, if, in fact, the officers had discovered no weapons and had been sued for false arrest, would the court have been obliged to direct a verdict on the ground that the arrest was lawful?

The pertinent legal principles are not in dispute. The rule is restated by Mr. Justice SHARPE in *People v. Kamhout,* 227 Mich. 172, 188, in which the cases are reviewed:

"What we do state to be the rule by which this court will be governed is, that if an officer, charged with the enforcement of the law, from the exercise of his own senses, or acting upon information received from sources apparently so reliable that a prudent and careful person, having due regard for the rights of others, would act thereon, has reasonable and probable cause to believe that intoxicating liquor is being unlawfully transported in an automobile in his presence, he may arrest the offender or search for and, if found, seize the contraband therein without a warrant to do so."

The restatement did not change the rule theretofore existing. It was made with full appreciation of

the use of automobiles in criminal operations, the proclivity of law-breakers to carry weapons, the developed faculties of police officers to detect crime, the attitude of law-abiding citizens toward the enforcement of the law, and also with the realization of the court that the constitutional provision is a mandate and must be preserved for the benefit of good citizens, although, as is usually the case when it reaches the court, it is invoked in favor of the lawbreaker. In *People* v. *Roache,* 237 Mich. 215, this court said:

"While we may take judicial notice of the fact that rum-runners and bandits ride in automobiles, and use them to commit crimes and effect their escape, may we not also take judicial notice of the fact that where there is one bandit or rum-runner passing over a public highway, there are thousands of respectable, law-abiding citizens who are doing likewise?"

The record leaves no doubt that the officers arrested defendants on general suspicion, and not for a specific offense. The record does not show that they ever claimed to the contrary. The magistrate so understood Sullivan's statement, several times repeated. The arrest of Massie, who had done no act to even arouse suspicion, confirms it. Mere general suspicion that, perhaps, a crime is being committed by defendants does not justify an arrest.

What happened seems quite clear from the testimony.. There was something about the cab, probably, aside from its speed, which suggested to officer Sullivan that he ought to look over the occupants. When he saw Stein make the motion, his suspicions were aroused generally and, like a good officer, he decided to investigate further. If, instead of arresting defendants, the officers had searched the cab, but

not the persons or baggage of defendants, it may be that defendants could not have complained. The mistake the officers made was in arresting defendants before they had reasonable ground to believe that a crime was being committed by defendants.

It is conceded that the result of the search cannot be taken into consideration in any way in determining the validity of the arrest. If the arrest at bar was justified by the facts known to the officers, so far as they have been given in evidence, and without other facts tending to show criminal acts, no citizen would be safe from the hazard of police annoyance and the disgrace of search of his person while riding in a taxicab if he made a sudden motion with his hands. No single case of carrying concealed weapons nor series of crimes can be permitted to reduce to such a level the immunity the people have preserved to themselves in the Constitution. If conditions demand a special rule of search on highways, the remedy is by amendment of the Constitution.

Upon argument, the question was raised whether a passenger in a taxicab, a common carrier, may question the legality of a search and seizure of his property located elsewhere in the cab than on his person or in his personal baggage or parcel. This refers to the pistol found on the seat behind Stein.

Investigation discloses no case in point and the application of general principles would involve such queries as whether the search is for the misconduct of the passenger and whether the passenger has hired exclusive possession of the cab or only transportation. We need not discuss the general aspects of the question. Assuming the cab was being employed as a public conveyance, in which defendants had hired only transportation, and that the pistol found behind Stein belonged to and was hidden by

him, nevertheless it appears that the weapon was procured by means of his unlawful arrest and it, therefore, was not admissible in evidence. *People* v. *Stewart*, 232 Mich. 670, is in point.

Writ denied.

McDONALD, C. J., and POTTER, NORTH, and WIEST, JJ., concurred with FEAD, J.

SHARPE, J. (*dissenting as to defendant Stein*). The wave of crime which is sweeping over this country is causing much alarm to law-abiding people. No banker, business man or householder seems immune from attack by the burglar, nor is any man, woman or child, when upon the streets, free from the danger of being kidnapped or robbed. The instrumentality which permits such freedom of action on the part of the lawbreaker may well be said to be the indiscriminate use of firearms. While the law prohibits their use except as provided for therein (3 Comp. Laws 1929, § 16749 *et. seq.*), it is a well-known fact that many people do not comply with its provisions. The desperado, while so armed, feels no danger from resistance, and persons who may lawfully carry them are afforded but little, if any, protection thereby, as, when assaulted, they realize that opposition, in most cases, means a speedy death.

The automobile provides a ready means for a quick getaway from the scene of the crime, and murders are frequently committed by men riding therein, particularly if in fear of apprehension. As was said by Mr. Justice STEERE in *People* v. *Case*, 220 Mich. 379, 388 (27 A. L. R. 686):

"The automobile is a swift and powerful vehicle of recent development which has multiplied by quantity production and taken possession of our high-

ways in battalions until the slower animal-drawn vehicles with their easily noted individuality are rare. Constructed as covered vehicles to standard form in immense quantities, and with a capacity for speed rivaling express trains, they furnish for successful commission of crime a disguising means of silent approach and swift escape unknown in the history of the world before their advent. The question of their police control and reasonable search on highways is a serious question far deeper and broader than their use in so-called 'boot-legging' or 'rum-running,' which in itself is no small matter. While a possession in the sense of private ownership, they are but a vehicle constructed for travel and transportation on highways. Their active use is not in homes nor on private premises, the privacy of which the law especially guards from search and seizure without process. The baffling extent to which they are successfully utilized to facilitate commission of crime of all degrees, from those against morality, chastity and decency to robbery, rape, burglary and murder is a matter of common knowledge. Upon that problem a condition and not a theory confronts proper administration of our criminal laws. Whether search of and seizure from an automobile upon a highway or other public place without a search warrant is unreasonable is in its final analysis to be determined as a judicial question in view of all the circumstances under which it is made.''

In *People* v. *Roache*, 237 Mich. 215, 220, Mr. Justice CLARK said:

''The automobile has come to be the convenient instrument of bandits and rum-runners. So used, it presents a most difficult problem to officers in their efforts to solve crime. If the rules relative to search and seizure, as applied to the home, be applied with like rigor to the automobile in public places, the automobile bandit and the rum-runner are practically immune. * * * Under most liberal rules as to

probable cause to search, the officer's problem remains difficult. We are dealing with a condition, a prevalence of crime, menacing to and destructive of the social order."

The evidence here presented discloses that the attention of the officers was first attracted to the cab in which the defendants were riding by the rate of speed at which it was traveling; that when the car in which they were riding, called the "seventh precinct cruiser," reached the side of the cab, officer Sullivan "noticed the defendant Stein reaching into his pocket as if to take something out, and place his hand behind him;" that the motion he made was "as if he was taking something out of his pocket, and putting it on the seat beside him * * * behind him."

Some persons are naturally more observant than others. They notice everything which occurs in their presence, and their minds, unconsciously perhaps, seek the reason therefor. A police officer, if not endowed with this faculty by nature, has been taught to acquire it by instruction and experience, and, when he sees anything unusual or suspicious occur, he at once seeks to satisfy himself of the reason therefor. *People* v. *Bradley,* 243 Mich. 609. The defendant Stein doubtless saw the police car as it came up to the side of the cab and recognized it as some of the officers in it were in uniform. His action cannot be otherwise accounted for. While Sullivan was not permitted to state the "impression" he had when he saw Stein remove something from his pocket and place it on the seat behind him, the movement attracted his attention, and to his observant mind there was a reason therefor, and that reason he at once ascribed to a desire on the part of Stein to conceal a revolver. There was no opportunity to in-

vestigate the cause of such action, or to secure a warrant to search the car. If a revolver was being concealed by Stein, he was violating the law. Immediate action was necessary. It was taken. Stein was arrested, and, after search, the revolver was found in the car where Sullivan had seen him place it.

The rule announced for the guidance of police officers in *People* v. *Kamhout,* 227 Mich. 172, quoted by Mr. Justice FEAD, has been many times approved by this court. Omitting that part of the statement relative to action in reliance upon information received, the paragraph will read:

"What we do state to be the rule by which the court will be governed is, that if an officer, charged with the enforcement of the law, from the exercise of his own senses * * * has reasonable and probable cause to believe," etc.

To justify the arrest, the officer must have had "reasonable and probable cause to suspect that the offense had been committed." *People* v. *Nappo,* 251 Mich. 89, 90. Mere suspicion, without cause therefor, is not sufficient. *People* v. *Stewart,* 232 Mich. 670. By the exercise of his sense of sight, the officer observed the action on the part of Stein which caused him to suspect that he was violating the law, and this action would, in my opinion, have led any officer, trained as Sullivan was in the faculty of observation, to have reached the same conclusion. *People* v. *Licavoli,* 245 Mich. 202, and *People* v. *Bartoletta,* 248 Mich. 499.

The purpose of the constitutional provision is to protect law-abiding citizens from illegal searches and seizures. It was not intended to protect the lawbreaker, and, although in this State the result of the search may not be considered in determining its

legality, it should not receive a construction which enables him to violate the law in the presence of an officer who, from his acts and the inference fairly deducible therefrom, believes that he is doing so.

In *Carroll* v. *United States,* 267 U. S. 132 (45 Sup. Ct. 280, 39 A. L. R. 790), in speaking of the provision in the Federal Constitution, the court said:

"The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

The distinction between the search of a store, dwelling house or other structure and a vehicle which "can be quickly moved out of the locality or jurisdiction in which the warrant must be sought" is particularly referred to. In speaking of this provision, it was said in *Brent* v. *Commonwealth,* 194 Ky. 504 (240 S. W. 45):

"The framers of that instrument were equally intent upon the proper administration of other governmental functions, among which is the efficacious enforcement of valid laws, to the end that order shall prevail."

The danger to which law-abiding citizens will be exposed by holding that the arrest and search in this case were within the law applicable thereto is, in my opinion, much overestimated. In the desire of such citizens to see the laws enforced and violators thereof apprehended, they are willing to submit to inconvenience and at times to acts in good faith on the part of officers which, under conditions other than those now prevailing, might be deemed oppressive and unlawful.

Reference is made at some length in the *Carroll Case* to the Federal statutes under which search

without warrant is permitted under the revenue laws, under the law prohibiting the bringing of intoxicating liquor into the Indian country, and the laws relating to collections in Alaska, and such searches are said to be not in violation of the constitutional provision.

A few years ago, in an effort to prevent the spread of disease in the corn crop of this State, the agents of the commissioner of agriculture, acting under 1 Comp. Laws 1929, § 5156 *et seq.,* stopped, and at times searched, automobiles passing into a restricted area without a warrant to do so. No complaint of their doing so in violation of the constitutional provision relating to search and seizure reached any of our courts.

Zealous officers should be encouraged in their efforts to rid their communities of violators of the law, and, while they may not make an arrest or search on suspicion alone, they may draw all reasonable inferences from acts done in their presence, and, if an act be so done, and the inference fairly deducible therefrom be such as to cause a prudent and careful officer to believe that the law is being violated, he may make an arrest and a search without the issue of a warrant to do so.

It cannot be doubted that officer Sullivan acted in good faith, and, in my opinion, his observation, acquired by nature, instruction and experience, of Stein's action, when the cruiser reached the side of the cab, in removing something from his pocket and placing it behind him, gave him "reasonable and probable cause to suspect" that in doing so he had handled a revolver.

The extent to which firearms are carried and used in automobiles by violators of the law and the means of escape provided thereby have brought about con-

ditions which seem to demand that the constitutional provision should not now be construed in a manner affording relief from arrest and search when officers, diligent in the discharge of their duties, observe such action as leads them to honestly believe that the law prohibiting their use is being violated in their presence.

In my opinion, the arrest of Stein and the search of the cab in which the revolver which he had attempted to conceal was found were legal, and the trial court was in error in excluding the revolver from the evidence in the case. There was nothing to justify the arrest or search of the defendant Massie, and he was properly discharged.

The order dismissing the case as to the defendant Stein should be reversed and set aside and the cause remanded with direction to proceed to a trial upon the merits, admitting the evidence of the arrest and search. The dismissal of the defendant Massie is affirmed.

Butzel, J. (*dissenting as to defendant Stein*). I concur in the opinion of Mr. Justice Sharpe, but in so doing am mindful that we are subscribing to a new rule and departing from the decisions referred to in the majority opinion in this case. The trial court followed these decisions. If officers, displaying proper authority and exercising sound discretion, observe an automobile proceeding at a very rapid rate of speed and sense from the conduct of one of its occupants that the law has been or is being violated, a search and seizure is not unreasonable. The automobile, while an instrumentality for good, nevertheless is also frequently made use of in the perpetration of crime and in effecting escapes. At the time of the adoption of article 2, § 10, of

the State Constitution, prohibiting unreasonable searches and seizures of the person, houses, papers and possessions of every person, obviously the utility of the automobile as one of the tools of lawlessness was not fully appreciated. Even at that date, however, the courts recognized that the definition of the term "reasonable" was affected by the mobility of certain possessions subject to search.

What is unreasonable or reasonable is a judicial question. In performance of their duty to uphold the constitutional rights and guaranties, the courts have denounced even the slightest tendency to encroach upon the immunity of the home and the person from search and seizure. By judicial pronouncement in many cases, this immunity has been extended to the automobile, except in cases in which the evidences of criminality have been open and positive. I believe that, by the same judicial process, we should restrict the rule, and that the search of an automobile under circumstances similar to those in the instant case, circumstances calculated to arouse the suspicions of a trained officer, should not be regarded as unreasonable. Such a restriction, however, does not entitle police officers to act maliciously, capriciously or without cause. Even if such search may at times cause inconvenience to law-abiding citizens, they nevertheless can suffer no real injury. They should be reconciled by the realization that serious efforts are being made to protect them from lawlessness.

WEADOCK, J. (*dissenting*). I dissent from the opinion of my brother FEAD in this case because I think the arrest of defendants was legal and the revolvers taken from them on their arrest were admissible in evidence on their trial. The Constitution,

article 2, § 10, prohibits "unreasonable searches and seizures" of the person, houses, papers and possessions of every person.

Whether a search is reasonable or not is a question for the court, as this court held in *People* v. *Case,* 220 Mich. 379 (27 A. L. R. 686). The majority opinion by Justice Steere was concurred in by Justices McDonald, Clark, Sharpe, and Moore. Justice Wiest filed a full dissenting opinion in which Justices Fellows and Bird joined. That case was very like this one. The whiskey was illegally in an automobile on the fair grounds in Midland during a fair. It was not a house that was in question, but a possession, as the taxicab was in this case.

These men were guilty of felony by carrying dangerous weapons in a vehicle occupied by them without a license therefor, contrary to section 227 of the criminal code, Act No. 328, Pub. Acts 1931, which is punished by a fine not exceeding $2,500 or imprisonment in the State prison not more than five years, or both in the discretion of the court. The arrest was the result of everyday common police sense. Their opinion was well-founded. The officers were justified by the result. The revolvers they obtained on arresting the men should have been admitted in evidence.

It is the common knowledge of wardens, penologists, psychiatrists and other students of crime that every sizable community has persons who have no visible means of support but live well, who have criminal records and consort with known criminals. Yet society must wait until a crime is committed. They sit back quietly and plan. We know they are doing it. But we must not anticipate their move. When circumstances are to their liking we gaze into a gun held by a man we knew was a criminal, but

whom the law would not permit us to hunt. Any city can be cleared of known criminals in 48 hours, if the hands of the police are unshackled and if the powers that be will assure them of backing and support. The criminal does not expect to be caught and, if caught, does not expect to be convicted. For every 100 crimes reported last year 44 arrests were made. For every 100 arrests, 42 were convicted. The criminal knows he has better than an even chance he will not even be arrested and better than five to one he will not be convicted. Why should he worry about a severe sentence which in 82 per cent. of the crimes will not be imposed.