## PEOPLE v. GONZALES.

1. SEARCHES AND SEIZURES—AUTOMOBILES—TRAFFIC TICKETS.

State police who stop an automobile on a State highway to issue a traffic ticket may not also routinely search the automobile (Const 1908, art 2, § 10, as last amended in 1952).

2. CONSTITUTIONAL LAW—SEIZURE OF CONCEALED WEAPONS.

Amendments to the State Constitution authorizing admission in evidence of weapons seized outside the curtilage. of any dwelling are not repugnant to the Constitution of the United States (US Const, Am 4; Mich Const 1908, art 2, § 10, as last amended in 1952).

3. ARREST—MISDEMEANOR IN PRESENCE OF OFFICERS.

Police officers who see a traffic violation have authority to arrest the violator without a warrant (CLS 1956, §§ 257.727, 257.728).

4. SAME—DEFINITION.

An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest and performed with the intent to effect an arrest and be so understood by the party arrested.

5. SAME—SEARCH AND SEIZURE WITHOUT WARRANT.

A lawful arrest is not a necessary condition precedent to a lawful search and seizure without a warrant.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9]  47 Am Jur, Searches and Seizures § 18.
[3]  4 Am Jur, Arrest § 24 et seq.
[4]  4 Am Jur, Arrest § 2.
[5]  47 Am Jur, Searches and Seizures § 4.
[6, 8, 10]  47 Am Jur, Searches and Seizures § 19.
[7]  47 Am Jur, Searches and Seizures § 20.
[10]  4 Am Jur, Arrest § 68.
[14]  11 Am Jur, Constitutional Law § 315.
[15]  11 Am Jur, Constitutional Law §§ 103, 104.
[16]  20 Am Jur, Evidence § 401.

6. SAME—SEARCH AND SEIZURE WITHOUT WARRANT.

A lawful arrest does not automatically render constitutional any contemporaneous seizure, it being necessary that such search and seizure without warrant be a reasonable one.

7. SAME—INCIDENTAL SEARCH—SEIZURE OF CONTRABAND ARTICLES.

Officers who, as an incident to a lawful arrest, make a reasonable search of the premises of the person arrested for the means or instruments of the crime committed, may seize the instruments or means of committing another crime which that incidental search uncovers, where the articles seized are of a contraband nature the possession of which was illegal per se or where another crime is discovered being committed in the presence of the officers.

8. SAME—SEARCH WITHOUT WARRANT.

Officers making a lawful arrest of a person committing a crime may, without a search warrant, contemporaneously search such person and the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed as well as weapons and other things to effect an escape from custody.

9. SEARCHES AND SEIZURES — AUTOMOBILES — TRAFFIC ARREST — WEAPONS.

Search of automobile which resulted in discovery of unlicensed pistol in the car and a bullet in pocket of a passenger when car was stopped at 4 a.m. because it was driven with but 1 headlight and driver issued a traffic ticket *held,* to have been unjustified, hence, illegal, where record discloses officers had no reason to suspect any violation of the law other than the traffic offense, there were no fruits of such offense to search for, nor any need to search for the means by which it had been committed and no need to search for weapons or other means of possible escape from custody (Const 1908, art 2, § 10, as last amended in 1952; CL 1948 and CLS 1956, §§ 28.421 *et seq.*; 257.683, 750.227).

10. ARREST—SEARCH AND SEIZURE—WEAPONS—ESCAPE.

A lawful arrest may justify search of the person and of the place, particularly if detention of the person arrested is contemplated and the search relates to weapons which might be used to assault the arresting officer and effect escape.

11. SAME—TRAFFIC VIOLATION—SEARCH OF AUTOMOBILE—JUSTIFICATION—JUDICIAL NOTICE.

Judicial notice is taken of the fact that there are many more arrests for traffic violations in which the safety of the arresting officer is not involved than there are arrests in which the

safety of the officer is involved, hence, his safety is not a sufficient justification for a routine search of the automobile stopped for a traffic violation.

12. SAME—SEARCH FOR EVIDENCE.

An arrest may not be used as a pretext to search for evidence.

13. SEARCHES AND SEIZURES—TRAFFIC VIOLATION—WAIVER OF OBJECTION.

Passenger of car, stopped at 4 a.m. for traffic violation because driven with but 1 headlight, had a right to raise constitutional objection to search and seizure of unlicensed pistol in absence of waiver of objection by anyone, since the request to remove himself from the automobile, where he had a right to be, directly affected him.

14. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—STATES—ADMISSION OF EVIDENCE.

The prohibition against unreasonable searches and seizures, contained in the Fourth Amendment, is an essential ingredient of due process and, as such, is enforceable against the States through the Fourteenth Amendment but does not extend to forbidding the admission in a State court for a State crime of evidence obtained by an unreasonable search and seizure (US Const, Ams 4, 14).

15. COURTS—CONSTITUTION OF THE UNITED STATES—SUPREME COURT.

The supreme court of the United States is the sole authoritative interpreter of the Constitution of the United States and speaks only through opinions adopted by the majority of the court.

16. CRIMINAL LAW—SUPPRESSION OF EVIDENCE—ILLEGAL SEARCH AND SEIZURE—AUTOMOBILES—WEAPONS.

It was error for trial court in prosecution for carrying concealed weapons to grant motion to suppress evidence as to defendant's possession of a pistol without a license, where such pistol was discovered by police officers who had stopped a car at 4 a.m. and arrested driver for driving with but 1 headlight and routine search of car disclosed the firearm in possession of a passenger, since although such search was not justified, the admission of evidence obtained by an illegal search and seizure outside the curtilage of a dwelling house is not barred by reason of having been so obtained (US Const, Ams 4, 14; Mich Const 1908, art 2, § 10, as last amended in 1952; CL 1948, § 750.227).

17. EVIDENCE—JUDICIAL NOTICE—USE OF AUTOMOBILES.

The Supreme Court takes judicial notice of the fact that the use of automobiles by law-abiding citizens so far exceeds their

use by law violators as to make paramount the protection of the law-abiding citizen over the right of police officers to verify an ungrounded suspicion that a law was being violated by searching a car stopped for a traffic violation committed in their presence.

Appeal from Genesee; Gadola (Paul V.), J. Submitted June 12, 1958. (Docket No. 47, Calendar No. 47,632.) Decided June 5, 1959.

Louis Stolz Gonzales was charged with carrying a concealed weapon. Motion to suppress evidence granted. People appeal. Reversed and remanded.

*Jerome F. O'Rourke,* Prosecuting Attorney, and *Edward P. Joseph,* Assistant Prosecuting Attorney, for the people.

*A. Matthew Buder,* for defendant.

*Amici Curiae:*

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, at the request of the Court on separate brief, for the people.

Civil Liberties Committee of the State Bar of Michigan, by *Avern Cohn, Roger Nielsen, Elizabeth Stack, James Sullivan* and *T. Harrison Stanton.*

EDWARDS, J. This case poses 2 important questions. The first is: May police who stop an automobile on a Michigan highway to issue a traffic ticket also routinely search the automobile under Michigan law? We answer this question in the negative. The second is: Are certain amendments to the Michigan Constitution authorizing admission into evidence of concealed weapons, however seized outside the curtilage of a dwelling house, repugnant to the United States Constitution? Under controlling decisions of

the United States supreme court, we answer this question in the negative also.

Defendant Louis Gonzales was a passenger in an automobile driven by one Jose Leal on October 18, 1955, at 4 o'clock in the morning, in the vicinity of Flint, Michigan. The automobile in which defendant was riding was stopped by 2 Michigan State police officers, 1 of whom subsequently testified that their attention had been called to the car by the fact that it had only 1 headlight burning. State Trooper Samonek advised Leal of the defective light and told him a summons would be issued for the violation. The trooper then took Leal back to the State police car and the summons was issued.

Subsequently Trooper Samonek went back to the car and asked the 2 occupants (1 of whom was defendant) to get out of the car so he "could check it." Under the circumstances outlined, the police, of course, had no search warrant. Trooper Samonek then saw the butt of a pistol sticking out of the front seat, and picked it up.

Upon being questioned, defendant admitted ownership of the gun and, on a search of defendant's person, the officers found a .38 caliber cartridge in defendant's pocket. Defendant had no permit to carry the weapon.

Trooper Samonek's testimony indicated that "we always check cars quite thoroughly at that time," apparently referring to the early hours of the morning. But he also testified pertaining to the issuance of the summons, "at that moment, we didn't have any further suspicion."

Defendant was arrested and charged with a felony, carrying a concealed weapon. CL 1948 and CLS 1956, § 28.421 *et seq.,* § 750.227 (Stat Ann and Stat Ann 1957 Cum Supp § 28.91 *et seq.,* § 28.424). Prior to trial in Genesee county circuit court defendant filed a motion to suppress evidence, claiming that the

search and seizure of the weapon were unreasonable under the 4th amendment to the United States Constitution, and that the 1936 and 1952 amendments to article 2, § 10, of the Michigan Constitution (1908), authorizing admission of evidence seized in an unconstitutional search, were repugnant to the 4th and 14th amendments to the United States Constitution.

The trial judge granted the motion and the people sought, and were granted, leave to appeal. On original consideration of this case, this Court remanded for furnishing a factual record pertaining to the search. *People* v. *Gonzales,* 349 Mich 572.

This having been certified, leave to appeal was again granted. On resubmission of the case, in view of the serious nature of the questions involved, this Court requested briefs *amici curiae* from the attorney general of the State of Michigan and from the State Bar of Michigan. The 2 questions posed were (1) whether or not the search and seizure related were "unreasonable" in a constitutional sense; and (2) if so, whether or not the 1936 and 1952 amendments to article 2, § 10, of the Michigan Constitution (1908) were repugnant to the 4th and 14th amendments to the United States Constitution. We acknowledge our debt for excellent briefs from the attorney general and from the civil liberties committee of the Michigan State Bar which have been of material assistance to the Court in resolving the problems concerned.

This case involved originally a misdemeanor for which 2 police officers stopped an automobile and issued the driver a traffic ticket. (See CLS 1956, § 257.683 [Stat Ann 1952 Rev § 9.2383].)

We are urged by the brief filed by the civil liberties committee of the Michigan State Bar to hold that the officer's actions in relation to Leal did not constitute an arrest. Failure on the part of the officers to use words of arrest is cited to justify this position.

The distinction, however, does not appear to us to be crucial since the officers saw the traffic violation and plainly had authority to arrest. CLS 1956, §§ 257.727, 257.728 (Stat Ann 1952 Rev and Stat Ann 1955 Cum Supp §§ 9.2427, 9.2428).

American Jurisprudence defines "arrest" in these terms:

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested." 4 Am Jur, Arrest, § 2

We prefer to examine this search on the assumption that the officers had made a lawful, if brief, arrest by stopping Leal and holding him until the summons was issued.

This does not, however, answer all our problems. A lawful arrest is not a necessary condition precedent to a lawful search and seizure without warrant. Facts which indicate probable cause to believe a felony is being committed have many times been held to render "reasonable" within constitutional terms a search and seizure without warrant. *People* v. *Licavoli,* 245 Mich 202; *People* v. *Miller,* 245 Mich 115; *People* v. *Orlando,* 305 Mich 686; *Scher* v. *United States,* 305 US 251 (59 S Ct 174, 83 L ed 151); CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874).

On the other hand, the fact of a lawful arrest does not, in our view, automatically render constitutional any contemporaneous search and seizure. The constitutional test is still whether or not under all the circumstances the search is "unreasonable."

"In general, the courts have recognized that officers who, as an incident to a lawful arrest, make a reasonable search of the premises of the person arrested for the means or instruments of the crime committed, may seize the instruments or means of committing another crime which that incidental search uncovers; at least that is true where the articles seized were of a contraband nature, the possession of which was illegal per se, or where another crime is discovered being committed in the presence of the officers." 169 ALR 1419, 1420, 1421.

The question of whether or not there was a preceding lawful arrest bears upon the purpose of the search and, of course, in many instances does serve to justify it. *Harris* v. *United States,* 331 US 145 (67 S Ct 1098, 91 L ed 1399); *People* v. *Cona,* 180 Mich 641; *People* v. *Conway,* 225 Mich 152.

The United States supreme court has stated the applicable principles thus:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." *Agnello* v. *United States,* 269 US 20, 30 (46 S Ct 4, 70 L ed 145, 51 ALR 409).

Thus, the search of the place where a lawful arrest is made of one committing a crime has been held constitutionally reasonable when the search was designed to reach (1) the fruits of the crime; or (2) the means by which it was committed; or (3) instruments calculated to effect escape from custody. No such purposes appear to have been present in our instant case.

We regard this record as demonstrating conclusively that the officers had no reason to suspect

any violation of the law other than the traffic offense for which the summons was issued to Leal. Further, we feel the record clearly shows that the officers had no intention of incarcerating Leal or detaining him further. There were no fruits of the traffic offense to search for, nor any need to search for the means by which it had been committed. And since no further detention was contemplated, there was no need to search for weapons or other means of possible escape from custody.

We cannot in the courts look back from that which an unlawful search actually uncovered to justify a constitutional violation. And we must always keep in mind that the constitutional rights of the innocent wither when those same rights are abused as to the guilty.

As of the time this search was commenced, we are unable to ascertain any justification therefor which would not freely allow any officer to search any automobile on Michigan highways in the early morning hours after the issuance of a ticket for any traffic offense.

The attorney general suggests to us that this is exactly what this Court's case law allows. We do not so read it.

He cites in support of his contention *People* v. *Orlando, supra; People* v. *Miller, supra; People* v. *Lewis,* 269 Mich 382; and *People* v. *Davis,* 247 Mich 536. In the *Miller Case,* the Court found no probable cause to believe a felony was being committed and held the search unconstitutional. In the *Lewis* and *Orlando Cases,* ample evidence of probable cause for the searching officers to believe that a felony was being committed was found. We find no conflict with these cases and our present holding.

As to *People* v. *Davis,* this is an astonishingly brief and unilluminating opinion. It deals with a situation involving a basic constitutional guarantee and does

so without even referring to the Constitution even though the briefs and records show that the constitutional issue was raised. The entire opinion consists of 1 paragraph. It cites 3 cases. We have examined each. The first 2, *People* v. *Cona,* 180 Mich 641; and *People* v. *Conway,* 225 Mich 152, are plainly not in point; and the 3d, *People* v. *Du Shane,* 240 Mich 35, is not authority for the key holding of the *Davis Case* which follows:

"The arrest here was lawful, and that it therefore was proper for the officers to search the person of defendant and the vehicle in which he was then riding is settled by the following authorities, from which we need not quote: *People* v. *Cona,* 180 Mich 641; *People* v. *Conway,* 225 Mich 152; *People* v. *Du Shane,* 240 Mich 35; 39 ALR 818, note."

From the record in the *Davis Case,* it appears likely that the arrest was made with the full intention of incarceration. Hence, some justification for the search may have existed which is not present in the instant situation. We feel, however, that the language quoted above is much too broad.

A lawful arrest does not justify any and all coincidental searches and seizures without warrant. The reasonableness of such searches and seizures must still appear. *People* v. *Conway, supra; Elliott* v. *State,* 173 Tenn 203 (116 SW2d 1009). The importance of the lawful arrest in this regard is that it may justify search of the person and of the place, particularly if detention of the person arrested is contemplated and the search relates to weapons which might be used to assault the arresting officer and effect escape.

Arrest was originally conceived as a deprival of freedom of some considerable duration. Hence, most of the older cases make no distinction between an arrest where the facts may indicate that safety

of the officer demands search and one for issuance of a traffic ticket where generally no such purpose may be cited to uphold reasonableness. At this point in the Twentieth Century we take judicial notice that there are many more of the latter arrests than of the former.

The basic principle involved as stated by the United States supreme court is simply, "An arrest may not be used as a pretext to search for evidence." *United States* v. *Lefkowitz,* 285 US 452, 467 (52 S Ct 420, 76 L ed 877, 82 ALR 775).

Further, we believe that on the facts in this case defendant had the right to raise the constitutional objection. There is no showing of any waiver of the objection by anyone. And though defendant apparently had only the status of a passenger, when the first requirement of the search (and a material one to its outcome) was that defendant remove himself from the seat in the automobile where he had a right to be, we regard the search as directly affecting him.

We believe that what we have said to this point requires our holding the search and seizure in the instant case to have been unreasonable in the constitutional sense. We believe, also, that our view of the constitutional guarantee involved as applied to a modern situation is in basic accord with applicable precedent in this and other jurisdictions. *People* v. *Conway, supra; People* v. *Roache,* 237 Mich 215; *People* v. *Miller, supra; People* v. *Stein,* 265 Mich 610 (92 ALR 481); *People* v. *Bissonette,* 327 Mich 349; *People, ex rel. Attorney General,* v. *Lansing Municipal Judge,* 327 Mich 410; *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA 1915B, 834, Ann Cas 1915C 1177); *Agnello* v. *United States, supra; Gambino* v. *United States,* 275 US 310 (48 S Ct 137, 72 L ed 293, 52 ALR 1381); *United States* v. *Lefkowitz, supra.*

We now turn to the second major question posed by this case:

"Are the 1935 [1936] and 1952 amendments to article 2, § 10, of the Michigan Constitution repugnant to the Fourth Amendment to the United States Constitution through the effect of the Fourteenth Amendment?"

The 4th amendment to the United States Constitution is as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Michigan Constitution (1908) contained language in article 2, § 10, identical in import:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

In 1914, in *Weeks* v. *United States, supra* (232 US 383), the United States supreme court not only held that the search and seizure there dealt with was unreasonable in a constitutional sense, but also held that the 4th amendment forbade the introduction of evidence in Federal courts seized in such a search by Federal officers.

Michigan (contrary to a majority of the other States) followed this exclusionary rule in interpreting its own constitutional safeguard against unreasonable searches and seizures. *People* v. *Marxhausen,* 204 Mich 559 (3 ALR 1505); *People* v. *Roache, supra; People* v. *Stein, supra.*

This last case involved the introduction of a concealed weapon seized in the search of a person arrested on general suspicion. This Court held the arrest and search illegal and excluded the introduction of the weapon thus illegally seized.

Hard on the heels of this case a successful effort was made to amend the Michigan Constitution so as to allow that which the *Stein Case* forbade. In 1936 the people adopted the following amendment to article 2, § 10:

"Provided, however, That the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction, or in any criminal proceeding held before any magistrate or justice of the peace,* any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bomb shell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing, seized by any peace officer outside the curtilage of any dwelling house in this State."

The supreme law of this State, its Constitution, thus directs the admission of evidence of the character with which we are concerned in this case *even if the evidence was produced* by an unconstitutional search and seizure.

Our remaining question is whether or not such State constitutional sanction of the admission of illegally-seized evidence is barred by the Federal Constitution.

To answer this, we must trace the history of the application of the first 8 amendments to the United States Constitution to the States. By their language, and by United States supreme court interpretation, it is clear that the States were free to disregard these amendments prior to the adoption of the 14th amendment.

---

* In 1952 an amendment added here "any narcotic drug or drugs."

The language of the 14th amendment obviously had some effect upon the applicability of these principles to the States:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Some Justices have argued that this language was "shorthand" for the first 8 amendments and thus made them applicable to the States. See dissenting opinions of Justices Black and Murphy in *Adamson v. California,* 332 US 46, 68, 123 (67 S Ct 1672, 91 L ed 1903, 171 ALR 1223). This view has, however, never been taken by the majority of the United States supreme court. *Twining* v. *State of New Jersey,* 211 US 78 (29 S Ct 14, 53 L ed 97); *Palko* v. *Connecticut,* 302 US 319 (58 S Ct 149, 82 L ed 288).

Justice Cardozo, in *Palko* v. *Connecticut, supra,* said that if the Bill of Rights had been brought within the 14th amendment by a process of absorption, that process had its source in the belief that neither liberty nor justice would exist if all of the principles of the Bill of Rights were sacrificed. Some rights, though important and valuable, were found not to be of the very essence of due process of law. Others (such as freedoms of speech, religion) were found to be implicit in "the concept of ordered liberty," and thus, through the 14th amendment, became valid as against the States.

The majority opinion in *Wolf* v. *Colorado,* 338 US 25, 26 (69 S Ct 1359, 93 L ed 1782), stressed the supreme court's consistent rejection of the minority

view that the due process clause is shorthand for the first 8 amendments. Cited as authority for this rejection were *Twining* and *Palko.*

See, also, *Adamson* v. *California, supra.*

Be this as it may, *Wolf* v. *Colorado* also held the 4th amendment's prohibition against unreasonable searches and seizures to be among the essential ingredients of due process and, hence, enforceable against the States through the 14th amendment. Justice Frankfurter (p 27), relying on *Twining* and *Palko,* reiterates the words of Justice Cardozo found in *Palko:*

"The security of one's privacy against arbitrary intrusion by the police—which is at the core of the 4th amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the due process clause."

However, the majority of the United States supreme court noted that the language of the 4th amendment does not directly bear upon the admission or exclusion of evidence. From this it proceeded in *Wolf* to reason that *the question of admissibility of evidence* is not of such a nature as to be within "the concept of ordered liberty" of the due process clause (pp 31, 33):

"We cannot, therefore, regard it as a departure from basic standards to remand such persons, together with those who emerge scatheless from a search, to the remedies of private action and such protection as the internal discipline of the police, under the eyes of an alert public opinion, may afford. Granting that in practice the exclusion of evidence may be an effective way of deterring unreasonable searches, it is not for this court to condemn as falling below the minimal standards assured by the due process clause a State's reliance upon other methods

which, if consistently enforced, would be equally effective.  *  *  *  .

"We hold, therefore, that in a prosecution in a State court for a State crime the 14th amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure."

Finally the supreme court had brought before it a State statute directly comparable to the Michigan 1936 amendment to article 2, § 10, in *Salsburg* v. *Maryland,* 346 US 545 (74 S Ct 280, 98 L ed 281).

The majority of the court there specifically rejected the argument addressed to this Court in this instant proceeding (pp 549, 550):

"Whatever may be our view as to the desirability of the classifications, we conclude that the 1951 amendment is within the liberal legislative license allowed a State in prescribing rules of practice. A State has especially wide discretion in prescribing practice relating to its police power, as is the case here.

"The 1951 amendment establishes no additional or different offenses in Anne Arundel county. It deals only with the admissibility of evidence in the prosecution of certain misdemeanors otherwise established by law. Rules of evidence, being procedural in their nature, are peculiarly discretionary with the lawmaking authority, one of whose primary responsibilities is to prescribe procedures for enforcing its laws. Several States have followed diametrically opposite policies as to the admission of illegally seized evidence. See appendix, *Wolf* v. *Colorado,* 338 US 25, 33–39 (69 S Ct 1359, 1364–1367, 93 L ed 1782, 1788–1792). See, also, *Adams* v. *New York,* 192 US 585, 594–596 (24 S Ct 372, 48 L ed 575). Maryland seeks to derive some benefit from each of the policies."

It is beyond all question that the United States supreme court is the sole authoritative interpreter of the United States Constitution; and that it speaks

only through opinions adopted by the majority of the court.

Interesting as may be the view of the minority of the United States supreme court as stated by Justices Murphy, Douglas and Rutledge in *Wolf* v. *Colorado, supra,* this offers no reason for failing to give effect to the interpretation adopted by the majority of the United States supreme court until and unless it is changed.

We hold article 2, § 10, as last amended in 1952, not offensive to the United States Constitution, amendments 4 and 14, on the grounds stated.

The answer to this second question is, of course, decisive as to this defendant. But we do not logically reach the attack upon the 1936 amendment until we have decided that this search itself was unreasonable. And the issue is important to millions of our citizens other than defendant. In *People* v. *Roache, supra* (pp 224, 225), this Court said:

"While we may take judicial notice of the fact that rum runners and bandits ride in automobiles, and use them to commit crimes and effect their escape, may we not also take judicial notice of the fact that where there is 1 bandit or rum runner passing over a public highway, there are thousands of respectable, law-abiding citizens who are doing likewise? The protection afforded by the Constitution to such persons must be regarded as paramount to any right to be given a police officer to enable him to verify his ungrounded suspicion that a law is being violated."

For reasons previously stated, the motion to suppress should not have been granted.

Reversed and remanded for trial.

Dethmers, C. J., and Carr, and Kelly, JJ., concurred with Edwards, J.

SMITH, J. (*concurring*). When we conclude that article 2, § 10, of the Michigan Constitution (1908), as amended in 1952, is not repugnant to the Constitution of the United States, we have disposed of the case before us.

With this holding, my concurrence ends. The balance of what is written concerns the concept of liberty under our constitutional guarantees. More specifically, whether the search of an automobile after the arrest of the driver for a minor offense against the traffic laws violates our basic freedoms.

The Constitution does not define liberty, nor do we. In an absolute sense it does not exist. A myriad of commands we follow daily. But not every intrusion upon our person or property is an encroachment so gross that the spirit becomes hostage to the act and we are no longer free. Much will depend upon the circumstances attendant. The car search itself, in the vicinity of a prison break, may be more an act of mercy than an act of oppression. The concept of freedom, then, has no fixed content. Always there is the problem of balance. The freedom of one man necessarily involves the correlative restraint of his brother. Specifically, and with reference to the criminal law, we are sensitive to the constitutional rights of alleged or convicted criminals. (See dissent, *People* v. *Moore,* 344 Mich 137, reversed, *Moore* v. *Michigan,* 355 US 155 [78 S Ct 191, 2 L ed2d 167].) But equally sensitive are we to the demands of our people that they be as secure as may be from violence and pillage. All too often, as we know judicially, the automobile is handmaiden to the assassin. Learned Hand put the problem we will some day reach in these words:* .

"The protection of the individual from oppression and abuse by the police and other enforcing officers

---

* *In re Fried* (CCA), 161 F2d 453, 465 (1 ALR2d 996).

is indeed a major interest in a free society; but so is the effective prosecution of crime, an interest which at times seems to be forgotten. Perfection is impossible; like other human institutions criminal proceedings must be a compromise."

The day for that problem, however, is not this day. The case before us is governed by a specific and valid constitutional enactment. The issue presented is whether or not certain evidence should be suppressed. Whether the search is reasonable or unreasonable is, under our Constitution, upon these facts, immaterial. Having thus necessarily ruled that the evidence should not be suppressed, our judicial function is exhausted.

For the present, then, I have no more to say respecting search and seizure upon a public highway than will be found herein and in my dissenting opinion in *People* v. *Robinson,* 344 Mich 353.

Subject to the above, I concur in reversal and remand.

BLACK and VOELKER, JJ., concurred with SMITH, J.

KAVANAGH, J., did not sit.