# STATE OF MICHIGAN

# COURT OF APPEALS

MUNSON MEDICAL CENTER,

       Plaintiff-Appellant,

v

COUNTY OF ROSCOMMON,

       Defendant-Appellee.

UNPUBLISHED
May 26, 2015

No. 320398
Roscommon Circuit Court
LC No. 13-721440-CK

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right from an order that denied its motion for summary disposition and granted defendant's motion for summary disposition. Because of the unusual procedural posture of this case and because the trial court failed to provide any insight as to why it ruled the way it did, we vacate the trial court's order and remand for further proceedings.

## I. BASIC FACTS

James Yeager was shot on August 20, 2011. Witnesses identified Tom Gorbachow as the shooter. While a state trooper was on the scene with Yeager, another call came in reporting that a suicidal subject was at the caller's residence. Dispatch determined that Gorbachow was the suicidal individual. Officers went to the location and secured Gorbachow in handcuffs. Gorbachow, who appeared dazed, claimed to be in significant pain. Officers found a self-inflicted gunshot wound to Gorbachow's chest that was missed on their initial observation. An ambulance was summoned and Gorbachow was transferred to a nearby hospital. He was later air-lifted to plaintiff's facility, where he stayed from August 21, 2011 to September 29, 2011.

Citing MCL 801.4(1), which provides that "all charges and expenses of safekeeping and maintaining prisoners and persons charged with an offense, shall be paid from the county treasury . . ." plaintiff sued defendant to collect Gorbachow's medical expenses, which totaled $286,986.01. Defendant denied that Gorbachow was a "prisoner" or "person charged with an offense." The parties filed cross motions for summary disposition, arguing whether Gorbachow was in police custody during his hospital stay. At the hearing on the motions, the trial court simply stated "I don't think this guy was a prisoner" and granted defendant summary disposition. Plaintiff now appeals as of right.

## II. STANDARD OF REVIEW

-1-

An appellate court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The parties submitted documentary evidence for the trial court to consider, including affidavits and depositions, thereby implicating MCR 2.116(C)(10), which provides that summary disposition may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "Summary disposition is only appropriate where the claim or defense would be insupportable at trial because of an incurable deficiency." *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998).

This case is unusual. Neither party made a jury demand. In fact, plaintiff argued that the facts were not reasonably in dispute and that this was a purely "legal" issue. The trial court's scheduling order likewise indicates that this was a non-jury matter. Therefore, the trial court judge was the ultimate trier of fact. Although couched in terms of competing motions for summary disposition, it appears that the trial court conducted a mini trial and concluded that Gorbachow was not in custody. "We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. The trial court's findings are given great deference because it is in a better position to examine the facts." *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 250-51; 792 NW2d 781, 790 (2010) (internal citations omitted).

## III. ANALYSIS

At issue in this case is whether Gorbachow was in custody within the meaning of MCL 801.4, which provides that "all charges and expenses of safekeeping and maintaining prisoners and persons charged with an offense, shall be paid from the county treasury . . ."

For purposes of MCL 801.4, an individual may be deemed a "prisoner" if his liberty has been "restrained by state authorities." *St Mary's Hosp v Saginaw Co*, 139 Mich App 647, 650; 363 NW2d 32 (1984). In *St. Mary's Hosp*, two individuals were injured while being pursued by the Saginaw Police Department. *Id.* at 648. Upon their release from the hospital, both individuals were immediately taken to jail *Id.* at 649. This Court concluded that the county was liable to the hospital for medical expenses because "[t]he men were in custody by virtue of the control the police exercised over them." *Id.* at 650. We distinguished the case from *Borgess Hosp v Berrien Co*, 114 Mich App 385; 319 NW2d 354 (1982), where the patient involved "was not in the custody of the county at the time the expenses were incurred." *Id.* In *Borgess*, the patient was injured while incarcerated but was not admitted to the hospital until after he was discharged from jail. *Id.* at 386. The Court stated that "[t]he county is not responsible for providing continued medical care after the inmate is discharged from custody, regardless of whether the illness or injury pre-existed or arose during the period of incarceration." *Id.* at 387.

A patient need not be formally arraigned in order for the county to be liable for payment of medical expenses after the patient was taken into custody. *Zieger Osteopathic Hosp Inc v Wayne Co*, 139 Mich App 630, 632; 363 NW2d 28 (1984). In *Zieger*, the patient was shot by a private security guard during an attempted armed robbery." *Id.* at 631. The Court stated that the statutory phrase, "charged with an offense," is "satisfied if formal charges are subsequently

brought." *Id.* at 632. The Court relied on the principal that counties are responsible for enforcing criminal laws and that the county was responsible for payment of the medical bills once an individual is taken into custody, even absent a formal arraignment. *Id.*

Similarly, in *Univ Emergency Services, PC v City of Detroit*, 141 Mich App 512, 518-19; 367 NW2d 344 (1984), this Court rejected the notion that formal arraignment was necessary. "[M]erely because a prisoner was confined in a hospital for treatment instead of the county jail, the county is not free from liability for his care and maintenance while in the hospital." *Id.* 518-519. This is true because the term "charged with an offense" as used in the statute "does not mean formal charges must be brought prior to incarceration, but that it is enough that formal charges are later filed." *Id.* at 519.

Thus, the relevant inquiry is not whether Gorbachow was formally arrested or arraigned; the sole issue is whether he was in police custody during his hospital stay. In the context of criminal law and custodial interrogations, we determine whether an individual was "in custody" by asking whether the individual believed that he was not free to leave. *People v Mendez*, 225 Mich App 381, 383; 571 NW2d 528 (1997). Similarly, in determining whether someone is under arrest, we have stated:

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested." [*Dixon v Shiner*, 12 Mich App 573, 582; 163 NW2d 481 (1968), *People v Gonzales*, 356 Mich 247, 253; 97 NW2d 16 (1959), quoting 4 Am Jur, Arrest, s 2.]

There is evidence to support plaintiff's position that Gorbachow was "in custody" while he was a patient at the facility. Police maintained a physical presence at the hospital for nine days. Although they claim it was as "security detail" in order to: 1) keep the victim, who was staying at the same hospital, safe; and, 2) to placate hospital staff, there was evidence that at least one of the officers referred to the situation as "prisoner security detail." Another officer, who claimed that Gorbachow was not arrested admitted that, in the past "in my experience, what we have done is, if we've had a suspect that we're not going to risk him going free, we say we've arrested him. We make the commitment to put 24/7 security on him so he does not leave. And when he leaves, he goes with us, which we have done." Police eventually left the hospital when Gorbachow's condition took a grave turn for the worse and he was placed in a medically induced coma. The social worker's notes reveal that police "are no longer at the bedside. They will come back when [patient] is potentially more of a flight risk." Police continued to contact hospital personnel, knowing that they planned to arrest Gorbachow as soon as he was discharged. In fact, one hospital note indicated: "Our concern was related to discharge planning to make sure that the [patient] had a proper plan in place. The police department showed significant interest in this [patient]. After long discussions with them this [patient] was deemed appropriate for them to take." Although police officers claimed that Gorbachow was arrested as he left the hospital, hospital notes reveal that an officer was at Gorbachow's bedside when he was

discharged.  The social worker's September 29, 2011 notes indicate "Michigan State Police at the bedside at 0755.  [Patient] in police custody."

The issue for the trier of fact is the degree of control law enforcement had over Gorbachow and whether his liberty had been restrained at the time services were provided.  *St Mary's Hosp*, 139 Mich App at 649-650.  There was evidence that Gorbachow was a "person charged with an offense" under MCL 801.4(1).  He was initially placed in handcuffs when officers first arrived on scene and was the only suspect in a violent crime.  But for his injury, it is evident that Gorbachow would have been immediately arrested and taken to jail.  Further, officers were initially stationed in the hospital, and the record demonstrates that the authorities had every intention of taking him into custody the moment he was discharged.

Other than the judge's statement that "I don't think this guy was a prisoner" there are no findings for us to review.  "Findings of fact regarding matters contested at a bench trial are sufficient if they are brief, definite, and pertinent, and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation."  *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).  Here, there is nothing for us to review.  On remand, the trial court judge is to resolve these issues, make findings of fact, and enter an appropriate judgment.  Because it is unclear to us whether the documentary evidence submitted by the parties was the sum total of evidence that each sought to introduce, the trial court may allow the parties to supplement the record.

Vacated and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto